John LEE, Appellant,

v.

FEDERAL MARITIME BOARD, Appellee.

No. 17079.

United States Court of Appeals Ninth Circuit.

Nov. 9, 1960.

578

Evans, McLaren, Lane, Powell & Beeks, William T. Beeks, Martin P. Detels, Jr., Seattle, Wash., Kominers & Fort, Mark P. Schlefer, Washington, D. C., for appellant.

George C. Doub, Asst. Atty. Gen., Washington, D. C., Morton Hollander, Washington, D. C., Keith R. Ferguson, Attorney, Department of Justice, San Francisco, Cal., Robert E. Mitchell, Asst. General Counsel, Federal Maritime Board, Edward Schmeltzer, Attorney, Federal Maritime Board, Washington, D. C., for appellee.

Before HAMLEY, HAMLIN and JERTBERG, Circuit Judges.

HAMLEY, Circuit Judge.

John Lee, president of Puget Sound-Alaska Van Lines, Inc., (Puget Sound)

seeks review of a district court order directing him to comply with a subpoena *duces tecum* calling for the production of financial data of that company.[1] This subpoena had been signed and issued by Arnold J. Roth, Examiner of the Federal Maritime Board (Board), in connection with an investigation being conducted by the Board in its proceeding entitled Docket No. 881, General Increases in Alaskan Rates and Charges.

In this court Lee contends that compliance with the subpoena should not have been ordered because (1) the district court was without jurisdiction to enforce the subpoena; (2) the subpoena is invalid because the examiner was without authority to sign it; and (3) issuance of the subpoena was arbitrary and capricious, and enforcement would sanction an unreasonable search and seizure, for the reason that the subpoena called for assertedly irrelevant confidential data.

■ *Jurisdiction of the district court.* Section 27 of the Shipping Act of 1916, as amended, 46 U.S.C.A. § 826, authorizes issuance of subpoenas in Board proceedings. It is provided in this section that obedience to any such subpoena "shall, on application by the Board, be enforced as are orders of the Board other than for the payment of money." Section 29 of the act, as amended, 46 U.S.C.A. § 828, provides that in case of violation of an order of the Board "other than an order for the payment of money," application may be made to a district court having jurisdiction of the parties, which court may enforce obedience to such order.

The United States District Court for the Western District of Washington, Northern Division, which entered the order of compliance under review, had personal jurisdiction over Lee. It would therefore appear that under the provisions of sections 27 and 29 of the act, referred to above, that court had subject-matter jurisdiction to enforce the subpoena.

Lee contends, however, that under section 2 of the subsequently enacted Hobbs Act, as amended, 5 U.S.C.A. § 1032, exclusive jurisdiction to enforce such subpoenas of the Board was transferred from the district courts to the courts of appeals.

It is provided in section 2 of the Hobbs Act that courts of appeals shall have exclusive jurisdiction to enjoin, set aside, suspend or determine the validity of specified orders of certain federal agencies. Among the orders included are "such final orders of the * * * Federal Maritime Board * * * as are now subject to judicial review pursuant to the provisions of section 830 of Title 46 * * *." Lee argues that 46 U.S.C.A. § 830, which is section 31 of the Shipping Act of 1916, as amended, is broad enough to include proceedings for the enforcement of a Board subpoena.[2]

1. The subpoena, dated July 18, 1960, directed Lee to appear at a designated office in Seattle, Washington, on July 19, 1960, to testify and to produce the following books, papers, documents and records:

"These [*sic*] records of Puget Sound-Alaska Van Lines, Inc., which indicate: (1) The capital equipment used to serve the Alaska trade under the company's tariff, and the value, financing and depreciation of such equipment;

"(2) The revenue tons, by commodity, carried on each voyage;

"(3) The revenues and expenses of each voyage;

"(4) The present and proposed method of operation; and

"(5) Any material or information which indicates the anticipated operating results of the company for the remainder of 1960."

The district court order entered on August 10, 1960, (stayed by that court pending disposition of appeal) directed Lee to appear and produce the documents in Washington, D. C., on August 30, 1960. As an exception agreed to by the parties it was provided that item (2) of the documents, as described in the subpoena, could be made available to the staff of the Federal Maritime Board and the attorneys or representative of the State of Alaska at the office of Puget Sound in Seattle.

2. 46 U.S.C.A. § 830 reads as follows:

"The venue and procedure in the courts of the United States in suits brought to enforce, suspend, or set aside, in whole

Under section 2 of the Hobbs Act only "final" orders are made subject to the jurisdiction of the courts of appeals. The district court held that the subpoena issued by the examiner is not a final order within the meaning of this statute.

■■ An agency order, although not the last order in an administrative proceeding, is "final" for purposes of review if it imposes an obligation, denies a right, or fixes some legal relationship which may cause irreparable injury. See Isbrandtsen Co. v. United States, 93 U.S. App.D.C. 293, 211 F.2d 51, 55–56, certiorari denied, 347 U.S. 990, 74 S.Ct. 852, 98 L.Ed. 1124, and cases there cited. A Board subpoena does not give rise to such legal consequences because it need not be complied with unless judicially enforced under sections 27 and 29 of the Shipping Act of 1916, as amended.[3]

Because of lack of finality the Hobbs Act is inapplicable in the case of Board subpoenas. It is therefore unnecessary to consider the other reasons advanced by the Board why the Hobbs Act should be held inapplicable. The district court had jurisdiction under sections 27 and 29 of the Shipping Act of 1916, as amended.

*Authority of examiner to sign subpoena.* The subpoena in question was both signed and issued by the Board examiner. Arguing that Board examiners are not authorized to sign subpoenas, Lee points to section 27 of the Shipping Act of 1916, as amended, 46 U.S.C.A. § 826. This section provides that subpoenas

"may be signed by any member of the board, and oaths or affirmations may be administered, witnesses examined, and evidence received by any member or examiner * * *."

The district court held that under section 7(b) of the Administrative Procedure Act, 5 U.S.C.A. § 1006(b) [4] and rule 10(g) of the Board's Rules of Practice and Procedure, 46 C.F.R. § 201.147,[5] the examiner was authorized to sign the subpoenas.

Lee points out that section 7(b) authorizes a presiding officer to issue subpoenas "authorized by law." He argues from this that a Board subpoena signed by an examiner is not authorized by law because under section 27 of the Shipping Act of 1916, subpoenas are to be signed by a Board member. Moreover, Lee argues, section 7(b) of the Administrative Procedure Act pertains only to the issuing of subpoenas and does not authorize presiding officers to "sign" subpoenas.

■ Section 7(b) of the Administrative Procedure Act was designed to enlarge the powers of presiding officers and to prevent the agency itself from in effect conducting hearings from behind the scenes. S.Rep. No. 752, 79th Cong., 1st Sess. (1945) at p. 21. It follows that in authorizing presiding officers to "issue" subpoenas Congress must have intended to include the authority to sign such documents. Otherwise the agency members could frustrate the indicated policy of Congress by the simple expedient of refusing to sign subpoenas.

or in part, any order of the Federal Maritime Board shall, except as otherwise provided, be the same as in similar suits in regard to orders of the Interstate Commerce Commission, but such suits may also be maintained in any district court having jurisdiction of the parties."

3. To be distinguished are orders issued by the Board under section 21 of that act, 46 U.S.C.A. § 820, requiring the filing of reports, accounts, records, rates, charges or memoranda. Failure to comply with such an order gives rise to an immediate penalty of one hundred dollars a day. Hence such orders are "final" and may be reviewed in the courts of appeals.

4. 5 U.S.C.A. § 1006(b), which was enacted in 1946, reads in part:

"(b) Officers presiding at hearings shall have authority, subject to the published rules of the agency and within its powers, to (1) administer oaths and affirmations, (2) issue subpoenas authorized by law * * *."

5. Rule 10(g), 46 C.F.R. § 201.147, reads in part:

"§ 201.147. *Authority of presiding officer.* The officer designated to hear a case shall have authority to arrange and give notice of hearings; sign and issue subpoenas authorized by law; * * *."

Where a statute draws a distinction between "sign" and "issue" effect must be given to such distinction. Where no such distinction is drawn none is intended. Section 7(b) of the Administrative Procedure Act does not draw such a distinction. Only the word "issue" is used.[6] We hold that the Board examiner was authorized to sign the subpoena.

*Relevance of the data called for.* In past rate cases the Board has determined the lawfulness of rates by examination of the assets, revenue and expenses of the dominant carrier in the pertinent trade area.[7] Lee argues that since Puget Sound is not the dominant carrier in the instant Board proceeding the data which this company is called upon to supply is irrelevant. Lee asserts that the data is of a confidential nature and that its disclosure to competitors will seriously damage Puget Sound's competitive position.

Neither the Board nor the district court has made a finding of relevance. The district court held that it must look to the issue of relevance in broad terms, and though the Board might later find the evidence of no weight under the precedents, the court could not at this stage find the data sought irrelevant as a matter of law. Lee offered to produce gross revenue and gross tonnage figures, which he conceded would be relevant to a determination of whether Puget Sound is the dominant carrier. This offer was not accepted. The Board acknowledged that the data specified in the subpoena was not sought for this purpose.

■ An administrative subpoena may be held unenforceable on the ground that the data called for is irrelevant to the purposes of the inquiry. This is made clear in Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614, although the validity of the subpoena there in question was upheld.[8]

In past rate proceedings the Board has applied the dominant-carrier theory after first examining the facts of the operations of all material services in the trade. It has never announced that the dominant-carrier theory will be inflexibly applied in all future rate proceedings. Since this particular proceeding has not yet reached the Board it could not have, and has not, found that data from competing carriers will be irrelevant in the instant rate case. For the same reason the district court could not have, and has not, made such a finding.

■ Absent application of the dominant-carrier theory, data of the kind specified in the subpoena is relevant to the determination of lawful rates, as Lee concedes. The Board is under no compulsion to apply that theory here, and whether it will do so is a matter of conjecture. We accordingly hold that past Board adherence to the dominant-carrier theory or absence of a Board finding of relevance in the instant proceeding does not render the questioned subpoena invalid.[9] Nor does lack of a district court finding that the data is relevant call for reversal of the order under review.

The enforcement order is affirmed except that the date set for the appearance of John Lee in Washington, D. C., and his production of documents shall be November 21, 1960, unless otherwise agreed upon by the parties. The mandate shall issue forthwith.

6. Nor does section 27 of the Shipping Act of 1916 draw such a distinction, only the word "signed" being used.

7. Matson Navigation Company—Rate Structure, 3 U.S.M.C. 82, 83 (1948); General Increases in Hawaiian Rates, 5 F.M.B. 347, 349 (1957); General Increases in Alaskan Rates and Charges, 5 F.M.B. 486, 490 (1958); Atlantic & Gulf-Puerto Rico General Increases in Rates and Charges, F.M.B. Docket No. 807, decided April 28, 1960.

8. See also Westside Ford, Inc. v. United States, 9 Cir., 206 F.2d 627, 631.

9. Procedures are available under which disclosure of confidential data may be minimized. Rule 10(aa) of the Board's Rules of Practice and Procedure; Federal Trade Commission v. Menzies, D.C., 145 F.Supp. 164, 171.