**FEDERAL HOME LOAN BANK BOARD et al., Appellants,**

**v.**

**LONG BEACH FEDERAL SAVINGS & LOAN ASSOCIATION, Appellee.**

**No. 17149.**

United States Court of Appeals
Ninth Circuit.

Sept. 5, 1961.

As Amended on Denial of Petition
for Clarification or Rehearing
Nov. 17, 1961.

William H. Orrick, Jr., Asst. U. S. Atty. Gen., Marvin C. Taylor, Special Litigation Counsel, U. S. Dept. of Justice, and Ray E. Dougherty, Assoc. Gen. Counsel, Federal Home Loan Bank Bd., Washington, D. C. (Thomas H. Creighton, Jr., Gen. Counsel, Albion W. Fenderson, and Paul E. McGraw for Federal Home Loan Bank Bd., Washington, D. C., of counsel), for appellant.

Charles K. Chapman, Long Beach, Cal., for appellee.

Granville B. Smith, Long Beach, Cal., and W. I. Gilbert, Jr., Los Angeles, Cal., amici curiae.

Before HAMLEY, MERRILL and KOELSCH, Circuit Judges.

HAMLEY, Circuit Judge.

Three district court orders entered in proceedings which began with the filing of a "Petition to Enforce Administrative Subpoenas and for Other Relief" are here under review. The second of these orders and an accompanying opinion are reported in Long Beach Federal Savings & Loan Ass'n v. Federal Home Loan Bank Board, D.C.S.D.Cal., 189 F.Supp. 589.

The administrative proceeding began on April 19, 1960, when Federal Home Loan Bank Board adopted Order No. 13,372.[1] In this order various violations of law and regulations and unsafe or unsound operations were stated as grounds for the appointment of a conservator for Long Beach Federal Savings & Loan Association and for the determination that an emergency existed requiring that immediate action be taken. By this order C. E. Ault was appointed supervisory representative in charge to take charge of the Association and its affairs, pending further disposition by the Board. Pursuant to this order Ault took possession and control of the premises, assets and property of the Association on April 22, 1960.

On May 12, 1960, the Board adopted Resolution No. 13,440. In this order the facts concerning the seizure of the Association were recited, and the above-stated grounds for the appointment of a conservator were outlined in greater detail. It was provided in this order than an administrative hearing for the purpose of determining whether those grounds existed would be held in Los Angeles, California, at which hearing the Association might appear and show cause why a conservator should not be appointed. On June 3, 1960, the Board adopted Resolution No. 13,513 designating Robert N. Hislop as hearing examiner.

Later that month the Association applied to the examiner for the issuance of subpoenas addressed to the following persons and corporations: Federal Home Loan Bank Board; J. Robertson, chairman of the Board; Ira A. Dixon and William J. Hallahan, members of the Board; John M. Wyman, director and chief supervisor; A. V. Ammann, assistant director and assistant chief supervisor; Federal Savings & Loan Insurance

1. The statutes relied upon by the Board as conferring authority to take this action are §§ 2(a) and 5(a, d) of the Home Owners' Loan Act of 1933, as amended, 12 U.S.C.A. §§ 1462(a) and 1464(a, d).

Corporation; and William H. Husband, manager of the insurance corporation. This application contained a statement of the general relevance and reasonable scope of the evidence sought, as required by section 6(c) of the Administrative Procedure Act, 5 U.S.C.A. § 1005(c).

The evidence, according to this statement, would prove that (1) the three Board members, Robertson, Dixon and Hallahan, were disqualified by reason of bias, prejudice and personal interest from acting as a Board, hearing officers, or otherwise, in connection with the proceeding, and (2) no grounds existed for the seizure of the Association or for the appointment of a conservator. Attached to the application was an affidavit signed by the president of the Association stating that each member of the Board was interested, prejudiced and consequently disqualified.

The examiner issued the subpoenas requested by the Association and also a number of subpoenas requested by the Board. The Board filed with the examiner a motion to quash the subpoenas which had been served upon Robertson, Dixon, Wyman and Ammann. The Association filed with the examiner a document generally and specifically denying each of the charges and accusations contained in Resolution No. 13,440. In this document the Association also denied the factual recitals in Order No. 13,372, and alleged three affirmative defenses.[2]

The administrative hearing began on September 1, 1960. Early in the proceedings counsel for the Association stated that he would like to ascertain whether the six individuals he had subpoenaed were in the hearing room. The examiner ruled that the request was premature although the subpoenas were returnable that day, as the Board was the moving party and would call its witnesses first.[3]

Objecting to this ruling, counsel for the Association then stated his position, which he maintained vehemently throughout the administrative hearing, that in order to avoid waiver of the Association's contention that the Board and its members were disqualified the Association must be permitted to proceed first with its evidence of bias and prejudice. Counsel stated that the six witnesses subpoenaed by the Association would provide such evidence and their presence was therefore needed at the outset of the hearing. Counsel for the Board contested this position and pressed for a ruling on the motion to quash four of the subpoenas.

The examiner then made the following rulings: (1) In the absence of some special showing not yet made in the case, the question of the motivation of the Board in instituting the proceedings was immaterial and irrelevant;[4] (2) no evidence would be permitted with respect to whether an emergency existed justifying the seizure of April 22, 1960; (3) the subpoenas issued at the request of the Association would not be quashed, but they could not be utilized for the production of evidence of bias, prejudice or related matters except upon "some proper or appropriate basis in the record," nor for the presentation of evidence concerning the propriety of the seizure effected on April 22, 1960;[5] and (4) witnesses subpoenaed by the Association were to

2. These affirmative defenses are set forth in full in Appendix D to the district court opinion herein. 189 F.Supp. at pages 622, 623.

3. Because of this ruling there was no formal roll call of witnesses subpoenaed by the Association. It is, however, ascertainable from the colloquy between counsel and the examiner that none of the six witnesses subpoenaed by the Association were in attendance at the hearing.

4. In further explanation of this ruling the examiner said:

" * * * I am ruling that at such time as you present your case, if there are any overt actions taken by the Federal Home Loan Bank Board or any of its members of which you are aware, which actions were official, public actions, that in any way prejudged this case, you are entitled to produce evidence in respect of those acts. * * * "

5. Further restricting the use of the subpoenas, the examiner directed the Association to first seek to obtain its relevant evidence from witnesses concerning whom

be called at such time as the Association would present its case in answer to that presented by the Board.

Counsel for the Association then made an offer of proof on the question of the alleged bias, prejudice and interest of Board members. The conclusion to be drawn from such proof, it was asserted, was that the Board's action in providing for the administrative hearing and appointing an examiner to conduct the hearing was invalid. The offer of proof was rejected and the examiner directed counsel for the Board to proceed with the presentation of the Board's evidence.

For reasons not here material the Board was unable to produce evidence it had counted upon, and a recess was taken. During the recess the Association filed in the district court its "Petition to Enforce Administrative Subpoenas and for Other Relief." It was alleged therein that the Association sought by the subpoenas issued at its request to prove bias, prejudice, interest and disqualification of the Board and its members.

It was also alleged that two of the persons subpoenaed, Hallahan and Husband, had "in no way responded" to the subpoenas served upon them, and that the four other personal witnesses had moved to quash the subpoenas served upon them, which subpoenas remained "unquashed but dishonored." It was averred that the examiner had ruled that bias, prejudice, interest and disqualification were not issues upon which he would compel or receive testimony or evidence.

The petition contained numerous other recitals concerning the alleged bias and prejudice of Board members, misrepresentations purportedly made by Board members to a congressional committee, the Association's constitutional right to a fair hearing, and its fear that if the Association proceeded before the examiner on any issue other than bias and prejudice it would waive its claim of Board disqualification.

The petition concluded with a prayer that the court (1) consider at one time all subpoenas sought to be enforced by all parties, (2) require respondents to give testimony and evidence as the court might order and direct, (3) issue an order to show cause why such relief should not be granted, and (4) grant such further relief as might appear necessary.

The court entered an order returnable September 12, 1960, requiring respondents to show cause why the relief sought should not be granted. Respondents countered with a "Motion to Dismiss" which the court also regarded as a responsive answer to the order to show cause. The position maintained therein was that the court was without jurisdiction to grant the relief requested. Asking that the court refrain from adjudicating the charges contained in Resolution No. 13,440 or petitioner's charges of bias and prejudice, the Board requested the court to rule that the examiner might proceed with a hearing of the former charges and that all witnesses duly subpoenaed to give testimony and produce documents before the examiner should do so subject to the rulings of the examiner on questions of admissibility.[6]

Finding it impossible to hear and dispose of the issues presented before the time the administrative hearing was scheduled to resume that day, the court on September 12, 1960, entered an order enjoining respondents from any further administrative proceedings until further order of the court.[7] The court proceeding then resumed on September 13 and was concluded three days later.

During the course of this hearing, documents showing the manner in which Examiner Hislop had been appointed

there had been no motions to quash subpoenas.

6. There was attached to this motion an affidavit of Board chairman Robertson and member Dixon in which they asserted that neither they personally nor the Board as such were biased or prejudiced as alleged. Hallahan, the third Board member named as a respondent, had resigned prior to the commencement of the administrative proceedings.

7. On October 24, 1960, respondents filed a notice of appeal from this restraining order.

were for the first time made available to counsel for the Association. Counsel thereupon lodged with the court a proposed amendment to the Association's petition, alleging that Hislop had not been appointed in the manner required by the Administrative Procedure Act. The essence of the Association's position in this regard was that while the Administrative Procedure Act provides that where an agency such as the Board does not have examiners of its own an examiner shall be selected by the Civil Service Commission, Hislop was actually selected by the Board. Counsel for the Board objected to the filing of this amendment.[8]

On November 18, 1960, the district court entered its opinion and order whereby:

(1) The Association's motion to amend its petition with respect to the validity of the appointment of the examiner was denied;

(2) the motion of respondents that the court rule that "all witnesses duly subpoenaed to give testimony and produce documents before the examiner * * * shall do so" was denied without prejudice to a proper motion for enforcement in a proper proceeding with proper service on the parties named in subpoenas;

(3) the prior order submitting the matter on the merits of the Association's petition for enforcement of subpoenas was vacated and further proceedings thereon were stayed until further order of the court;

(4) further administrative proceedings under Board Order No. 13,-440 or No. 13,372 were enjoined until the Board should determine (a) the timeliness, sufficiency and good faith of the showings alleging bias, prejudice, interest and disqualification on the part of respondents, and if such things were found affirmatively, then until the Board should hear and determine such charges on the merits, and (b) the timeliness, sufficiency and good faith of the charges of disqualification of the examiner, and if the same were found affirmatively, until the Board should hear and determine such charges on the merits;

(5) the order of September 12, 1960, staying the proceedings before the examiner was vacated;

(6) the motion of respondents to dismiss the petition was denied.

On November 21, 1960, the district court denied as moot respondents' motion for a stay of the order of September 12, 1960. Respondents then filed a notice of appeal from the orders of November 18 and 21, 1960.

■■ The appeal from the order of September 12, 1960, is dismissed as moot, since the district court vacated that order on November 18, 1960. The appeal from the order of November 21, 1960, is dismissed as moot, since it dealt only with a motion to stay the order of September 12, 1960. This leaves for consideration the order of November 18, 1960, the six decretal provisions of which are summarized above.

The Board's attack upon this order is directed primarily against the provision outlined in paragraph (4) above, by which the Board is directed to make certain determinations before proceeding with any hearing under the designated Board orders.

The train of reasoning which led the trial court to take this action may be traced as follows: (1) The witnesses subpoenaed by the Association had not responded to the subpoenas served upon them; (2) the Association had appropriately invoked the jurisdiction of the court to compel these recalcitrant wit-

8. On September 19, 1960, after the hearing before the district court had concluded, the Association filed with the court a notice that it had that day filed with the Board a "Protest Against Unlawfully Appointed Hearings Officer Holding Administrative Hearing." This protest was on the same grounds as those set out in the amendment to the petition previously lodged with the court.

nesses to obey the subpoenas; (3) in the meantime, however, the Association had timely challenged the qualifications of Board members and the examiner; (4) disposition of these challenges was in the first instance a matter for Board action; (5) such action had not yet been taken, but might subsequently lead to the appointment of a new examiner, or a disqualification of Board members, or both; (6) in that event all questions pertaining to enforcement of the present subpoenas might become moot; (7) in view of this possibility an order enforcing the present subpoenas would be premature; (8) but if the examiner were to proceed with the administrative hearing without awaiting the Board's disposition of the challenges by the Association, the latter would in effect have been denied any relief on its petition for enforcement of the subpoenas; (9) under the circumstances and by virtue of the authority conferred under the All Writs Act, 28 U.S.C.A. § 1651, and section 10(d) of the Administrative Procedure Act, 5 U.S.C.A. § 1009(d), and in the exercise of its general equity jurisdiction the court might and should restrain further administrative proceedings on the merits pending the Board's action on the challenges as directed.

The Association's challenges to the qualifications of the Board members and to the validity of the examiner's appointment were thus the basis for the court's conclusion that proceedings on the petition for enforcement of the subpoenas should be stayed and further proceedings before the examiner should be restrained. We therefore turn at once to a consideration of those challenges and the effect they might properly be given in the district court enforcement proceedings.

In such a court proceeding the prime questions are whether the issuance of the administrative subpoenas was authorized by law and whether the evidence the production of which was thereby sought is relevant and of reasonable scope. See section 6(c) of the Administrative Procedure Act, 5 U.S.C.A. § 1005 (c); Lee v. Federal Maritime Board, 9 Cir., 284 F.2d 577, 581.

The Board in effect contended that to the extent the Association sought by means of these subpoenas to compel production of evidence of bias and prejudice on the part of Board members, such evidence was not relevant, and to that extent enforcement should be denied. The court did not deal with this contention since it believed the Board might itself resolve the question of bias, prejudice and disqualification in acting upon the Association's challenges as ordered by the court.

█ In our opinion, however, a majority of the Board members were without power to disqualify themselves for bias or prejudice, although possibly an individual member comprising a minority of the Board could have done so. The charge of bias and prejudice directed against the majority of the members of a government agency must give way to the necessity of permitting the agency to perform the function which it alone is empowered to perform.[9]

It follows that no action the Board could have taken on the Association's challenge as to the qualifications of its members could have resulted in the invalidation of previous Board orders and thus undermined the legality of the subpoenas. Nor could any such action have disabled the Board, or a majority thereof, from performing its statutory duties at all future stages of the proceeding. Hence the district court should not have directed the Board to act on the challenges nor should it have stayed action on the enforcement petition pending such a Board determination.

█ But while the charges of bias and prejudice on the part of the Board and its members could not operate to

9. See F.T.C. v. Cement Institute, 333 U.S. 683, 701, 68 S.Ct. 793, 92 L.Ed. 1010; United States v. Morgan, 313 U.S. 409, 421, 61 S.Ct. 999, 85 L.Ed. 1429; Mar-

quette Cement Mfg. Co. v. F.T.C., 7 Cir., 147 F.2d 589, 593; Loughran v. F.T.C., 8 Cir., 143 F.2d 431, 433.

undermine the authority under which the Board issued the subpoenas, evidence of bias and prejudice the Association thereby sought to produce was not irrelevant. In connection with the presentation of the Association's case-in-chief, as the examiner properly ruled, the Board should receive evidence of bias and prejudice on the part of its members. Such evidence would be relevant because the Board could determine for itself whether, if the facts are established, a minority member is disqualified from participation in the final decision. Berkshire Employees Ass'n of Berkshire Knitting Mills v. N.L.R.B. 3 Cir., 121 F.2d 235, 239. Evidence of bias or prejudice on the part of Board members would also be relevant for consideration by a court called upon to review a final Board order. See Marquette Cement Mfg. Co. v. F.T.C., supra note 9, 147 F.2d at page 594.

The Association's attack upon the appointment of the examiner came during the course of the district court proceedings when the facts concerning Hislop's appointment first came to light. The Association then tendered an amendment to its petition, alleging these facts and asserting that the examiner was not validly appointed. While the proposed amendment did not expressly so state, counsel for the Association made it clear that the amendment was also intended as a basis for the contention that enforcement of the subpoenas was necessary to enable the Association to produce further evidence concerning the manner in which the examiner was appointed.

The court denied the motion to file the amendment because of its view that under section 7(a) of the Administrative Procedure Act the question of disqualification of the hearing officer was, as were the charges of bias and prejudice made against the Board, initially to be determined by the Board. But this seems to us to overlook the fact that the determination as to the legality of the examiner's appointment may in turn be determinative of whether subpoenas issued by him were subpoenas authorized by law, and the latter question is one to be determined by the district court in an enforcement proceeding.

Only parties to an agency proceeding may invoke the section 7(a) procedure. But recalcitrant witnesses resisting the enforcement of subpoenas are entitled to contend that the subpoenas were not authorized by law because the examiner was not legally appointed, and the district court must then consider and determine the questions thus raised.

It is true that the appellants were not contending in the district court that the examiner was illegally appointed. But they were in effect questioning the relevance of evidence bearing in any way upon the manner of his appointment which the Association might seek to produce under the subpoenas the enforcement of which it sought. Such evidence would not be relevant if the facts already of record resolve the issue of the validity of the examiner's appointment. Hence the court was presented with the question of whether as a matter of law the examiner was legally or illegally appointed and the subpoenas accordingly were or were not authorized by law.[10]

In our opinion the facts established of record demonstrate that Examiner Hislop was not appointed in the manner provided by statute.

It is provided in section 11 of the Administrative Procedure Act, 5 U.S.C.A. § 1010, that agencies occasionally or temporarily insufficiently staffed "may utilize examiners selected by the [Civil Service] Commission from and with the consent of other agencies." The Federal Home Loan Bank Board does not have hearing examiners and was therefore required to utilize an examiner selected by the Civil Service Commission.

Section 34.13 of the Civil Service Regulations pertains to the utilization of

10. Counsel for all parties take the position on this appeal that the district court could have dealt with the question without awaiting Board action, and that we should decide the matter.

examiners of other agencies. Paragraph (b) of this regulation provides:

"(b) Agencies, by agreement between themselves, may arrange for the temporary utilization by one agency of a hearing examiner or hearing examiners of another agency. Such agreements must have the prior approval of the Commission before being put into effect."

Hislop's designation was arranged through the Civil Service Commission. The general counsel of the Federal Home Loan Bank Board telephoned the Commission regarding the procedure for obtaining a hearing examiner. Wilson M. Matthews, administrative officer of the hearing examiner program, suggested that the Board negotiate for the loan of an examiner from an agency permanently staffed with hearing examiners. Matthews gave the general counsel a list of names of hearing examiners experienced in financial matters. Included were names of hearing examiners permanently employed by the Securities and Exchange Commission.

The Board's general counsel then made inquiries of the SEC concerning its hearing examiners. He was informed that one of the most capable examiners permanently employed by the SEC was Hislop. The information was given that Hislop was possessed of a judicial temperament and was especially qualified in matters concerning accounting and finance. Neither the members of the Board nor its general counsel had ever met Hislop.

The Board, acting through its chairman, wrote to the chairman of the SEC requesting the loan of Hislop for service as a hearing examiner. The request was granted. The Board then requested the Civil Service Commission to give its approval, which was granted. The Board's general counsel testified before a committee of Congress that he "selected" Hislop "because he was in the Securities Exchange Commission, and I understood that he was an outstanding examiner."

There is nothing in the record to indicate that Hislop was selected on the basis of any inappropriate consideration as to his bent of mind or predisposition, and appellants disclaim any charge of personal bias against him. Nevertheless, the facts recited above amply demonstrate that he was not "selected" by the Civil Service Commission as required by the Administrative Procedure Act. The very essence of that act was to divorce in so far as possible the functions of prosecution and adjudication. The procedures provided are designed to accomplish this more or less mechanically and to avoid placing parties in the embarrassing and burdensome position of having to charge or prove an inappropriate commingling of these functions.[11]

If there is any doubt as to the legality of Hislop's appointment we think the doubt should be resolved in favor of the Association. Otherwise there must be further proceedings occasioning further delay in these protracted proceedings.[12] Moreover, a contrary resolution of such a doubt, if ultimately proved erroneous, could taint and vitiate several years of administrative proceedings. The possibility of error can be prevented at this stage without substantial loss of time since the administrative proceeding has not yet really gotten under way.

11. The express terms of § 11 and the legislative history indicate the intent and purpose of Congress to have all examiners designated in a fair and impartial manner. See S.Rep. No. 752, 79th Cong., 1st Sess., and H.R.Rep. No. 1980, 79th Cong., 2d Sess.

12. This is the seventh time since 1946 that a phase of the litigation involving the Board and the Association or its members has been before this court. The previous reported decisions of the district court, this court, and the United States Supreme Court are listed in the district court opinion and order here under review, 189 F.Supp. 589, at page 597. Six additional actions connected with this general litigation are now pending in the district court.

We therefore hold that Hislop was not validly appointed as hearing examiner for this case. The court for that reason should have denied the petition for enforcement of the subpoenas. It further erred in ruling that the examiner's authority should be determined by the Board and in restraining further proceedings until this determination was made.

In view of this disposition of the case it is not strictly necessary to pass upon the district court's determination that the Association is entitled to produce evidence at the administrative hearing as to the justification for the seizure of the Association pursuant to the order of April 19, 1960. Since, however, this is a matter which may be expected to arise upon a resumption of the administrative hearing, we deem it appropriate to state that: (1) the justification for the seizure of the Association pursuant to Order No. 13,372, adopted on April 19, 1960, is not, as such, an issue in the administrative proceedings instituted by Resolution No. 13,440, adopted on May 12, 1960, and if appellee has and seeks to pursue any remedy by reason of asserted loss resulting from such seizure, it must be in some other proceeding, as to the nature or availability of which we express no opinion; (2) since the Association's ousted management cannot be held responsible for what the supervisory representative in charge has done since the seizure on April 22, 1960, the question of whether a conservator should be appointed, which is the prime issue in the administrative proceedings under Resolution No. 13,440, is to be determined with reference to the facts as they existed prior to the seizure effectuated on April 22, 1960, when the supervisory representative in charge took possession and control of the premises, assets and property of the Association.

The suggestion made to this court by the Board that we should order all future district court proceedings involving any phase of Board-Association litigation to be heard before a different district judge, or that this court should retain continuing jurisdiction of this proceeding and appoint a referee to deal with future procedural problems, is rejected.

The order of November 18, 1960, is reversed and the cause is remanded with directions to dismiss the action.