**FEDERAL MARITIME COMMISSION,
Petitioner,**

v.

**E. G. CARAGHER, Vice President, Norton, Lilly & Co., Inc., General Agents for Yamashita-Shinnihon Steamship Co., Ltd. (formerly Yamashita Kisen Kaisha), Sochira Yaguchi, General Manager, Nippon Yusen Kaisha, Ltd., Ib Alvin, Moller-Maersk Line, A.P., P. D. Marchessini, P. D. Marchessini & Co., Cortland Linder, Managing Director, Kerr Steamship Co. Inc., General Agents for Kawasaki Kisen Kaisha, Ltd., T. J. Royden, President, Funch, Edye & Co., Inc., General Agents for De La Rama Lines, James Young, Vice President, Barber Fern-Ville Lines, Barber-Wilhelmsen Line, and Mordecai Chovers, Vice-President, American-Israeli Shipping Co., Inc., General Agents for Zim Israel Navigation Co., Ltd., Respondents.**

United States District Court
S. D. New York.
June 15, 1965.

Robert M. Morgenthau, U. S. Atty., Louis E. Greco, Attorney in Charge, Admiralty & Shipping Section, Department of Justice, Gilbert S. Fleischer, Attorney, Admiralty & Shipping Section, Department of Justice, M. C. Miskovsky, Sol., Federal Maritime Commission, H. B. Mutter, Attorney, Office of Sol., Federal Maritime Commission, for petitioner.

Haight, Gardner, Poor & Havens, New York City, for respondents except Mordecai Chovers; Thomas K. Roche, Sanford C. Miller, William F. Faison, New York City, of counsel.

Hill, Betts, Yamaoka, Freehill & Longcope, New York City, for respondent Mordecai Chovers.

McGOHEY, District Judge.

The petitioner moves by order to show cause to enforce subpoenas duces tecum issued in connection with an "Investigation of Rates in the Hong Kong-United States Atlantic and Gulf Trade." They call for production of five categories of documents. The motion is granted as to items 1 and 2. It is denied as to items 3, 4 and 5.

Common carriers by water in foreign commerce and conferences of such carriers are required to file with the Commission, tariffs showing all the rates and charges of such carriers or conferences of carriers.[1] The Commission has the power to disapprove such rates if after a hearing it determines that they are so unreasonably high or low as to be detrimental to the commerce of the United States.[2]

Pursuant to its statutory authority, the Commission by an order dated December 10, 1962, commenced an investigation to determine if the rates in the Hong Kong-United States Atlantic and Gulf Trade were so unreasonably low as to be detrimental to the commerce of the United States. Thereafter, in an order dated June 10, 1963, the scope of the investigation was expanded in order also to determine if any of the respondents were engaging in practices which may be in violation of sections 14, 16, 17 or 18(b) (3) of the Shipping Act. Thereupon all of the instant respondents were served with subpoenas duces tecum calling for the production of the following: (1) all inbound rated manifests for cargo transported from Hong Kong to the At-

---

1. Shipping Act of 1916, § 18(b) (1), 75 Stat. 764 as amended, 46 U.S.C. § 817 (b) (1).

2. Id. § 18(b) (5), 46 U.S.C. § 817(b) (5).

lantic or Gulf coasts from January 1, 1962, to the present; (2) all inbound rated manifests in possession of the addressee at the time of the hearing for cargo loaded at Hong Kong but which vessels have not yet arrived at Atlantic or Gulf Ports; (3) all stevedoring and terminal services contracts which contain rates and conditions for handling cargo moving from Hong Kong to New York City, New York during the year 1962; (4) all invoices evidencing billing for stevedoring and terminal services in connection with handling cargo moving from Hong Kong to New York City, New York during the year 1962; (5) all cancelled checks or receipts for payment for stevedoring and terminal services in connection with handling cargo moving from Hong Kong to New York City, New York during the year 1962. Respondent Zim Israel did not comply fully, the remaining respondents did not comply in any respect with the subpoenas.

The most serious challenge to the subpoenas is that the Commission lacked the power to issue them with respect to items 3, 4 and 5. The respondents do not question the relevance of these items to the issue of unreasonably low rates but rather contend that the Commission may issue subpoenas only in connection with investigations respecting "alleged violations" of the Act [3] and that an investigation of rates under 18(b) (5) of the Act [4] is not an investigation of any violation. The Commission contends that its subpoena power is not thus limited but also covers an 18(b) (5) investigation because a hearing would be meaningless without the production of documents.

◾ In an effort to show that the Commission's power is limited to investigations of "alleged violations" respondents refer to the 1961 amendments to the Shipping Act. "However, statutes are construed by the courts with reference to the circumstances existing at the time of passage." [5] Section 27, which defines the Commission's power of subpoena, was contained in the original Act when it was enacted in 1916. Therefore reference will be made to the circumstances existing at that time.

◾ When the original Act was before the House, Representative Alexander, Chairman of the House Committee on Merchant Marine and Fisheries of the 62d Congress, stated: "The provisions of section 27 relating to the power of the board to compel the attendance of witnesses and the production of documentary and other evidence are also substantially similar to those of the interstate-commerce act, *except that the board may exercise such power only 'for the purpose of investigating alleged violations of this act'* instead of 'for the purposes of this act' as in the interstate-commerce act." [6] (Emphasis added.) The phrase "for the purposes of this Act" as contained in the Interstate Commerce Act was interpreted by the Supreme Court as limited to violations of that Act. Harriman v. Interstate Commerce Commission.[7] That the import of the Harriman decision was known to the Legislature at the time it enacted the Shipping Act of 1916 is apparent from the record. Mr. Alexander, specifically referred to the decision and stated: "the power of the board [the Commission's predecessor] is limited to investigations of violations." [8] It is therefore apparent that section 27 did not give the Commission the power of subpoena in connection with all of its functions under

3. Section 27 of the Act provides in part: "For the purpose of investigating alleged violations of this chapter, the Federal Maritime [Commission] may by subpoena compel * * * the production of books, papers and documents and other evidence * * *." 39 Stat. 737, 46 U.S.C. § 826.

4. 46 U.S.C. § 817(b) (5).

5. United States v. Wise, 370 U.S. 405, 411, 82 S.Ct. 1354, 8 L.Ed.2d 590 (1962).

6. 53 Cong.Rec. 8081.

7. 211 U.S. 407, 29 S.Ct. 115, 53 L.Ed. 253 (1908).

8. 53 Cong.Rec. 8081.

the Act but only for the investigation of alleged violations.[9]

Section 18(b) (5) does not by its terms forbid any activity. It merely gives the Commission the power to disapprove rates "which, after a hearing, it finds to be so unreasonably high or low as to be detrimental to the commerce of the United States." The Commission indeed does not contend otherwise but only that the power of subpoena is necessary for the proper performance of its function under that section. Be that as it may, Congress has not seen fit to give it that power.

 In 1961 when section 18(b) (5) was added to the Shipping Act, the 87th Congress was well aware of the limitations on the Commission's power to issue subpoenas. In fact it was specifically recommended that the Commission's power be expanded: "An appropriate provision should be inserted in the Shipping Act to authorize the Board to conduct preliminary investigations and in aid thereof to exercise the power of subpoena * * * antecedent to the filing of any complaint on the board's own motion. * * * At present, the statute does not clearly authorize the board to exercise its power of subpoena in advance of a formal allega-

tion of a violation of the Act." [10] These recommendations were not accepted and the provisions of section 27 remain unchanged. Thus it is clear that Congress initially intended to limit the power of subpoena and more specifically, when section 18(b) (5) was added in 1961, adhered to its original intention. Lee v. Federal Maritime Board .upon which the petitioner relies does not require a different result. There, the Court of Appeals for the Ninth Circuit was not concerned with the question of the Commission's power of subpoena where no violation of the Act was involved, nor was the case decided upon that basis.[11] Accordingly, it is concluded that the Commission is without the power to compel the production in this proceeding of items 3, 4 and 5 of the subpoena.[12]

 Items 1 and 2 appear to be relevant to the investigation into possible violations of sections 14, 16, 17 and 18(b) (3) of the Act. Respondents indeed do not strongly urge lack of statutory authority for the Commission's demand for these items. Their chief contention is that the Commission inexcusably delayed seeking an enforcement order and that items 1 and 2 are neither relevant nor necessary to the proceed-

9. Even under the original Act the Board had the duty to make investigations other than for violations or alleged violations. See e.g. § 12 "Investigations as to cost of merchant vessels," 39 Stat. 732, 46 U.S.C. § 811. See also § 15, under which the Commission has a function similar to that under § 18(b) (5)—disapproval of agreements between carriers. 39 Stat. 733, as amended, 46 U.S.C. § 814.

10. H.R.Rep. No. 498, 87th Cong. 1st Sess. 25 (1961).

11. "In this court Lee contends that compliance with the subpoena should not have been ordered because (1) the district court was without jurisdiction to enforce the subpoena; [Lee contended that the court of appeals had exclusive jurisdiction.] (2) the subpoena is invalid because the examiner was without authority to sign it; and (3) the issuance of the subpoena was arbitrary and ca-

pricious, and enforcement would sanction an unreasonable search and seizure, for the reason 'that the subpoena called for assertedly irrelevant confidential data." 284 F.2d 577, 579 (1960).

12. In Federal Maritime Commission v. Anglo-Canadian Shipping Co., 335 F.2d 255 (1964), the Court of Appeals for the Ninth Circuit held that the Commission's rule of Practice 12(K) was invalid. The rule was entitled "Discovery and Production of Documents." The basis for the decision was that the Commission did not have the statutory authority to promulgate rules permitting discovery. Initially in the instant case, the Commission requested the documents in question under Rule 12(K) supra and the request was granted. But later upon the Commission's application the request was withdrawn and instead the Commission requested the same items under a subpoena duces tecum.

ing before the Commission. The contention is rejected.

On April 21, 1964, respondents stated on the record that they would not comply with the subpoenas and gave their reasons. On June 2, 1964, the refusal was referred to the Commission for action. The hearing was thereafter concluded on July 2, 1964, without any action having been taken on the refusal. Thereafter briefs were filed in connection with the hearing and the matter was finally submitted for a decision to the hearing examiner on February 5, 1965. The order to show cause bringing on this petition for enforcement of the subpoenas was signed May 19, 1965. Accordingly, the respondents contend, in view of the conclusion of the hearing and the inordinate delay in seeking enforcement of the subpoenas, the items sought can hardly be relevant and necessary to the hearing.

To be sure, the Commission's conduct is puzzling and the reasons for the delay are not apparent from the record. However, the only determination this court need make is that "the order was regularly made and duly issued." [13] Respondents make no claim that these requirements were not met. And there is no claim of prejudice resulting from the delay. The fact that at the present time the matter is awaiting decision is not controlling since the case may be reopened at any time prior to decision.[14] Therefore the court finds that the items 1 and 2 are relevant to the inquiry into possible violations of sections 14, 16, 17 and 18(b) (3) and that the orders were regularly made and duly issued.

The motion is denied as to items 3, 4 and 5 of the subpoenas. It is granted as to items 1 and 2 and the respondents are directed to produce the documents specified in those items.

Settle order.

13. 46 U.S.C. § 828.

14. "At any time prior to the filing of his decision, the presiding officer, either upon

petition or within his discretion, may, for good cause and upon reasonable notice, reopen the case for the reception of further evidence." Rule 13(c), 18 F.R. 3725.