**SAN FRANCISCO MINING EXCHANGE, Petitioner,**

v.

**SECURITIES AND EXCHANGE COMMISSION, Respondent.**

**No. 20930.**

United States Court of Appeals
Ninth Circuit.

May 16, 1967.

Rehearing Denied June 28, 1967.

**164**

Gardiner Johnson, Johnson & Stanton, San Francisco, Cal., for petitioner.

Frank E. Kennamer, Jr., Asst. Gen. Counsel, Arthur Pennekamp, Atty., S.E. C., San Francisco, Cal., David Ferber, Sol., Philip A. Loomis, Gen. Counsel, S.E. C., Washington, D. C., for respondent.

Before HAMLEY, KOELSCH and BROWNING, Circuit Judges.

HAMLEY, Circuit Judge:

This matter is before us on the petition of the San Francisco Mining Exchange (Exchange), to review an order of the Securities and Exchange Commission (Commission). The Exchange is registered as a national securities exchange under section 6 of the Securities Exchange Act of 1934 (Act), 48 Stat. 885 (1934), 15 U.S.C. § 78f (1964). The order under review, entered pursuant to section 19(a) (1) of the Act, 48 Stat. 898, as amended, 15 U.S.C. § 78s(a) (1) (1964), withdraws the Exchange's registration.

After extensive hearings, the Commission's examiner found, among other things, that there had been numerous and repeated violations of statutes and regulations involving members and officials of the Exchange and issuers of securities listed on the Exchange; that the Exchange had not made any effort to force issuers or members to comply with the Act or to force them to comply with its own rules adopted pursuant to the Act; that the Exchange had been a vehicle for evading and circumventing provisions of the statutes and regulations designed for the protection of investors; and that remedial action must be taken in the public interest.

The hearing examiner recommended that the Exchange be given a final opportunity to mend its ways by effecting a complete reorganization within ninety days, failing which the registration of the Exchange would be withdrawn. On agency review, the Commission made its own findings of fact which were substantially in accord with those made by the examiner. However, the Commission rejected the recommendation of the hearing examiner concerning the remedy to be imposed, and ordered withdrawal of the Exchange's registration.

On this review, the Exchange does not contest the agency findings concerning the Exchange's derelictions. It contends, however, that the remedy recommended by the hearing examiner is supported by the record and that the remedy ordered by the Commission is not supported by the record. Accordingly, the Exchange argues, this court should reverse with directions to modify the agency order to provide for a reorganization of the Exchange, as recommended by the hearing examiner, thereby setting aside the Commission's order for withdrawal of the Exchange's registration.

In taking this position, the Exchange emphasizes the care with which the hearing examiner considered the entire

record, the expressions of opinion received in evidence from public officials and public bodies to the effect that the Exchange is rendering a valuable service and that it should be permitted to reorganize, the lack of specific evidence that any member of the public suffered monetary loss, and the fact that no new charges have been filed during the four years since the agency proceeding was instituted.

■ Under section 19(a)(1) of the Act, the Commission may suspend or withdraw the registration of a registered exchange if in its opinion such action is necessary or appropriate for the protection of investors and if it finds, after opportunity for a hearing, that the exchange has violated any provision of the Act or has failed to enforce compliance with the Act by its members or by issuers of securities registered on its exchange. The Commission found that the Exchange was in violation of section 19(a)(1) and, in our opinion, this finding is supported by substantial evidence. Where the established facts empower an administrative agency to take particular remedial action, the determination of whether it should take that action rests within the sound discretion of the agency.[1]

Although the Exchange has been registered under the Act since October 1, 1934, the Commission findings indicate that it is not now serving a substantial

public interest.[2] Over the years, the Commission has, because of violations, delisted securities of twenty-eight companies from the Exchange. The Exchange has had many opportunities to reform itself, having received numerous letters from the Commission staff with regard to reporting violations. Some of the staff recommendations for corrective action were followed, others were not.

■ The expressions received from public officials and public bodies did not, in the main, deal with the merits of the case, but with the general desirability of continuing the Exchange in operation. The Commission was not required to accord controlling weight to testimonials of this kind.

■ Section 19(a)(1) of the Act does not require a showing of monetary loss to investors as a prerequisite to withdrawal of an exchange's registration. In any event, the record indicates that some of the abuses by the Exchange probably resulted in financial injury to investors.

Moreover, the Commission properly concluded that the complete reorganization proposed by the hearing examiner, including "entirely new personnel in every department of management without exception," would in essence be the withdrawal of the registration of the present Exchange, and the registration of a completely new exchange. The Commission's decision to withdraw the Ex-

1. See Consolo v. Federal Maritime Commission, 383 U.S. 607, 620–621, 86 S.Ct. 1018, 16 L.Ed.2d 131; Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 208, 67 S.Ct. 1575, 91 L. Ed. 1995; American Power & Light Co. v. Securities and Exchange Commission, 329 U.S. 90, 112–113, 67 S.Ct. 133, 91 L.Ed. 103.

2. As of December, 1962, the Exchange, which is an unincorporated business association, had thirteen regular members. Only six of these members were actively engaged in the securities business as representatives of three registered broker-dealer firms. Aside from its secretary, Frank J. Carter, the Exchange had only one salaried employee.

During 1961, an average of forty-two stocks, having an average price per share of fourteen cents, were listed for trading on the Exchange. Of these forty-two listed companies, at least fifteen had no revenue, and eight others had revenue of less than one thousand dollars. Only four listed companies had net earnings, and three of these had trading markets through listings on other exchanges. Of the forty-two companies, sixteen did not have a book value of more than one cent per share, and nine of these had no book value. Of the remaining twenty-six companies twenty-four had a book value of twenty cents or less per share. As of December, 1962, twenty-five of the forty-two companies were not actively engaged in operations.

change's registration was therefore a reasonable solution to the problem.

■ We are convinced that the Commission did not abuse its discretion in ordering withdrawal of the Exchange's registration.

The Exchange also contends the Commission order should be reversed because the Exchange was not permitted to secure, through the issuance of a subpoena duces tecum and subpoenas ad testificandum, Commission documents and the testimony of members of the Commission, and its secretary, for use at the administrative hearing. The Exchange argues that this action by the Commission resulted in a denial of due process of law.

On the last day of the administrative hearing the Exchange applied for these subpoenas. The application for issuance of a subpoena duces tecum was in the form of an affidavit. Referring to statements contained in an intra-Commission staff letter which had come to the Exchange's attention it was alleged, in effect, that the Commission had prejudged the case. Accordingly, the Exchange asserted that it was necessary to gain access to designated Commission documents under the control of Orval E. DuBois, secretary of the Commission, in order to ascertain whether the Commissioners were biased and prejudiced.[3]

The application for issuance of subpoenas ad testificandum was designed to produce the testimony of the five members of the Commission and the Commission secretary. As indicated during oral argument before the Commission, the general purpose for seeking these subpoenas was the same as that entertained by the Exchange in requesting the subpoena duces tecum.

The hearing examiner denied the application for issuance of a subpoena duces tecum, but granted the Exchange's request for issuance of subpoenas ad testificandum. On agency review, the Commission affirmed the examiner's decision to deny the application for issuance of a subpoena duces tecum, but reversed the examiner's decision to grant the application for issuance of the subpoenas ad testificandum. The result was that no subpoenas were issued and the hearing closed without any evidence being adduced from the Commissioners and the secretary of the Commission, or from the agency files concerning the question of bias and prejudice.

The Exchange argues that the administrative record developed a number of specific facts indicating that one or more of the Commission members had not maintained an impartial and objective attitude in deciding this case. The Exchange contends that it was therefore entitled to the subpoenas to inquire into the possible bias or prejudice of Commission members.

Among the facts so relied upon by the Exchange are certain statements made in the intra-Commission staff letter referred to above. This is a letter, dated June 28, 1962, from Philip A. Loomis, Jr., director of the Commission's division of trading and exchanges, to Arthur E. Pennekamp, regional administrator of the Commission. The letter was written about one month before the proceeding against the Exchange was commenced on July 26, 1962.[4]

---

3. The materials sought to be produced were as follows:
 "All correspondence, memoranda, or reports transmitted to or from Arthur E. Pennekamp, Regional Administrator, or his staff, and Orval E. DuBois, Secretary of the Division of Trading and Exchanges, or members of their staff between March 27 and June 12, 1962 relative to statements made by Archie H. Chevrier concerning the San Francisco Mining Exchange, investigations of the conduct and operations of the San Francisco Mining Exchange, and any original or amended reports concerning the San Francisco Mining Exchange, including any directions by or from the Securities and Exchange Commission or its members concerning revisions, amendments or deletions of any such reports."

4. The letter was sent one month prior to the formal Commission proceedings because it contained a suggestion that the

The Exchange relies upon these excerpts from that letter as proof of the Commission's predisposition in the case: "The Commission has authorized us to proceed;" "revised in accordance with the Commission's directions;" "staff recommendations have been considered by the Commission * * * ;" "the Commission will order such withdrawal;" "the Commission does not plan;" "the Commission does not wish;" "the Commission does not plan to make the report public;" "the Commission will not hereafter make the report * * * public."

The principal inference which is to be drawn from these excerpts is that the Commission's action in authorizing the administrative proceeding against the Exchange was based at least in part upon its consideration of the staff report. This inference is corroborated by the Commission itself. In its memorandum opinion and order affirming the hearing examiner's denial of the application for issuance of a subpoena duces tecum, the Commission acknowledged that it had considered the staff report in determining whether to authorize the proceeding.

■ In our opinion the Commission's utilization of the staff report for this purpose does not tend to show that any Commissioner had prejudged the case, or was biased and prejudiced concerning it. Nor did such use, in our opinion, render suspect the Commission's factual determinations and exercise of discretion in the case.

Under 5 U.S.C. § 554(d) (1966), a provision of the Administrative Procedure Act (formerly 5 U.S.C. § 1004(c) (1964)), staff members of an administrative agency, engaged in the performance of investigative or prosecuting functions in a particular case may not, in that or a factually related case, with exceptions not here relevant, participate or advise in the decision, recommend decision or agency review pursuant to 5 U.S.C. § 557 (1966), except as witness or counsel in public proceedings. Members of the body comprising the agency, however, are expressly excepted from this limitation. Congress thus recognized that the members comprising the agency are necessarily responsible for both functions and may not be excluded from either.

■ Consistent with their authorized dual function, the members of the Commission considered the staff report and, partly on the basis of that report, authorized this proceeding against the Exchange. This was entirely appropriate.

The affidavit filed in support of the application for a subpoena duces tecum contains the allegation that the staff report was prepared "under the direction" of the Commission. This may be true in the sense that the Commission instructed the staff to undertake such an investigation. However, if counsel meant to imply that the Commission supervised its preparation, he alleged no facts in support of such a conclusion. None of the above-quoted excerpts from the Loomis letter, relied upon by the Exchange, corroborate any such contention. Nor is there elsewhere in that letter any statement to the effect that the Commission supervised preparation of the staff report.[5]

---

Exchange be allowed to terminate its registration voluntarily by July 15, 1962 and thereby avoid public hearings. To make this proposition known to the Exchange, Loomis suggested that a copy of his letter be given to the Exchange.

5. The Exchange stresses that the Loomis letter indicates that the Commission directed certain revisions of the staff report covering investigation of the Exchange. As indicated above, the report was properly before the Commission for consideration in determining whether to institute proceedings against the Exchange. The Exchange was provided with a copy of the report and was permitted to make the report public if it chose to do so. In contemplation of the possibility that this might be done, the Commission could properly direct that the report be revised in order to make it suitable for public disclosure.

The Commission's action in this regard does not tend to show that members of the Commission had prejudged the case, or were biased or prejudiced against the Exchange. Quite to the contrary, the de-

■ It may be that the Commission members, in deciding this case on the merits, made use of the staff report and other information that may have been brought to their attention at the time they were called upon to determine if the proceeding should be instituted. However, absent any factual basis for believing that the Commission made such use of these materials, as is the case here, an inquiry into the state of mind of administrative adjudicators during the decisional process is wholly improper.[6]

The Exchange argues in this court that it is entitled to issuance of the subpoenas in order that it may inquire into the possible lack of objectivity and impartiality of two of the five members of the Commission who had served many years in various capacities as members of the Commission staff. The reference made by the Exchange is to Commissioners Manuel Frederick Cohen and Byron Darlington Woodside.

Commissioner Cohen occupied various Commission staff positions from 1942 to 1961, serving in the division of corporation finance from 1952 until October, 1961, except for the year 1959, when he was advisor to the Commission. He became director of the division of corporation finance in 1960, and was elevated to the Commission on October 11, 1961. Commissioner Woodside served in the Commission's division of corporation finance from 1940 to 1960, except for brief periods when he was on loan to other federal agencies. He became director of the corporation finance division in 1952, and served in that capacity until he became a member of the Commission on July 15, 1960.

Counsel for the Exchange alleged in his affidavit supporting his application for issuance of a subpoena duces tecum, that the members of the Commission had already formulated the opinion that the registration of the Exchange should be terminated. He further alleged in this affidavit that this opinion on the part of the Commissioners was based upon the consideration of evidence and matters not in the record. However, the only allegation in this affidavit tending to support this statement consisted of the quoted excerpts from the Loomis letter. These excerpts make no reference to prior staff activities by any member of the Commission. We have found no indication in the record that, in the proceedings before the agency, the Exchange based its request for the subpoenas upon prior staff activities by members of the Commission.

■■ It therefore appears that this contention, advanced for the first time in this court, comes too late for consideration here. In any event, the facts stated above, of which we take judicial notice, indicate that the prior staff activities of Commissioners Cohen and Woodside were too remote in time and too unrelated in function to provide a reasonable basis for inquiry as to how this may have affected their judicial attitude in deciding this case.

It is true, as the Commission concedes, that while these Commissioners were serving in their staff positions, they may have had some connection with one or more of the proceedings to withdraw the registration of certain securities registered on the Exchange. These delisting proceedings, however, were concerned primarily with the conduct of the issuer—not with the conduct of the Exchange.

Moreover, the Commission's findings and opinion dealing with the merits of

termination to afford the Exchange an opportunity to examine the entire staff report prior to the proceeding evidences a fair and impartial treatment of the Exchange.

6. See United States v. Morgan, 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429;

Davis v. Braswell Motor Freight Lines, Inc., 5 Cir., 363 F.2d 600, 604; N.L.R.B. v. Botany Worsted Mills, Inc., 3 Cir., 106 F.2d 263, 267. As the court said in Botany Worsted: "The function of deciding controversies might soon be overwhelmed by the duty of answering questions about them." (106 F.2d at 267)

this proceeding make extensive reference to the delinquencies of the issuers of securities listed on the Exchange, including reference to prior Commission delisting proceedings. In the absence of any contention by the Exchange to the contrary, this indicates that information concerning these other proceedings was developed in this administrative record, or was known to all of the Commissioners by the exercise of official notice. It follows that every Commissioner who acted in the present proceeding, whether or not he had previously served on the Commission staff, was properly advised as to the delisting proceedings.

The Exchange argues that the Commission's then effective rules of practice entitled the Exchange to the issuance of the subpoenas ad testificandum as a matter of right, there being no requirement that the request be supported by a statement of general relevance, and no provision for the exercise of discretion by the examiner.[7] Accordingly, the Exchange contends that the action of the Commission in reversing the hearing examiner's order authorizing issuance of the subpoenas ad testificandum, ran counter to the rule referred to above. For that reason, and because the individuals sought to be subpoenaed were the very Commissioners who reversed the hearing examiner, the Exchange asserts that it was denied due process of law.

 On February 26, 1964, the Commission issued its memorandum opinion and order deciding the question which had been certified to the Commission from the hearing examiner, namely, whether the issuance of the subpoenas ad testificandum was mandatory under

the then-existing rules of the Commission.[8] We believe that the Commission was entitled to refuse the request for subpoenas ad testificandum if, as the Commission here found, the evidence sought to be produced was not shown to be generally relevant and material. See Federal Home Loan Bank Board v. Long Beach Federal Savings & Loan Association, 9 Cir., 295 F.2d 403, 405. Were the rule otherwise, an indiscriminate subpoenaing of Commission members would lead to an unreasonable and unnecessary delay of the administrative process.

In support of its contention that the subpoenas ad testificandum and the subpoena duces tecum should have issued, the Exchange has cited several decisions, none of which we find applicable under the circumstances of this · case. We briefly note the principal cases so cited.

In Federal Home Loan Bank Board v. Long Beach Federal Savings & Loan Association, 9 Cir., 295 F.2d 403, although we there held that the Savings and Loan Association was entitled to inquire of the Board members concerning their bias and prejudice, the Association in that case made extensive factual allegations, supported by an offer of proof, to the effect that such bias and prejudice existed on the part of Board members. In the case before us, however, no such factual allegations were made by the Exchange, nor was any offer of proof submitted to the effect that members of the Commission were prejudiced by their previous staff activities.

 The only factual allegation made by the Exchange to support its request for a subpoena duces tecum was

7. See 17 C.F.R. § 201.14(b) (1) (i) (1963 Supp.), which provided that Commission personnel authorized to issue subpoenas:
 "Shall issue subpoenas requiring the attendance and testimony of witnesses at any designated place of hearing, upon application therefor by any party, * * * *"
 On September 28, 1963 (28 F.R. 10486), after this proceeding was commenced, the above rule was amended and no longer

contains this mandatory language. See 17 C.F.R. § 201.14(b) (1) (Jan. 1964).

8. The Commission considered it appropriate to review the examiner's ruling on the ground that the motion for certification was tantamount to a motion to quash under the rules of the Commission. Under the circumstances, we think this was proper action on the part of the Commission.

170

the general statement made in the affidavit filed on February 11, 1963:

"Affiant is informed and believes, and therefore alleges the fact to be that said members have already formulated and hold the opinion that the registration of the San Francisco Mining Exchange should be terminated; that said opinion on their part is based upon the consideration of evidence and matters not a part of the record in these proceedings."

This allegation, however, had reference to the excerpted portions of the Loomis letter discussed above and, in our opinion, is inadequate to justify granting Exchange's application for issuance of the subpoenas in question.

In the other relevant cases cited by the Exchange, to be discussed below, the subpoena question presented to this court was not directly in issue. Nevertheless, these cases do have relevance in deciding when a situation exists in which it would be necessary to allow a subpoena to issue for the purpose of examining the past activities of a particular Commissioner. However, in each of these cases there was evidence far in excess of that before this court, that a Board member had previously had contact with the case in an investigatory or prosecuting capacity. As noted above, there is simply no showing of any such activity on the part of Commissioners Cohen and Woodside with regard to Exchange's case, nor is there an adequate factual showing that any member of the Commission had prejudged the case.

In American Cyanamid Company v. Federal Trade Commission, 6 Cir., 363 F.2d 757, the court vacated and remanded a Commission order in which the Commission had refused to disqualify the chairman, notwithstanding a showing that the chairman had previously served as chief counsel of a Senate subcommittee which had conducted an investigation of many of the same facts and is-

sues and of the same parties that were involved in the proceedings before the Commission. Cf., Safeway Stores Incorp. v. Federal Trade Commission, 9 Cir., 366 F.2d 795, 802.

In Berkshire Employees Ass'n of Berkshire Knitting Mills v. N.L.R.B., 3 Cir., 121 F.2d 235, the court held that the petitioner was entitled, in the agency proceeding, to adduce evidence which the petitioner had tendered with respect to the activities of a Board member who allegedly had espoused the union's cause prior to commencement of the administrative proceeding.

In Amos Treat & Co. v. S.E.C., 113 U.S.App.D.C. 100, 306 F.2d 260, the court held that the company was entitled to enjoin further administrative proceedings where it was alleged, and not disputed that a member of the Commission hearing the dispute had previously participated in the investigation of the Treat firm. In the case now before us, the contention was not that a Commissioner had participated in the case at the staff level, but that he might have; the contention was advanced for the first time in this court; and evidence of which we can take judicial notice indicates that it is unlikely that any Commissioner had any contact with this particular case in a staff capacity.

In R. A. Holman & Co. v. S.E.C., 2 Cir., 366 F.2d 446, the court affirmed the Commission's refusal to issue subpoenas ad testificandum for Commissioner Woodside and others for the purpose of inquiring into the asserted disqualification of that Commissioner. The court held that there was no indication that Commissioner Woodside, before his appointment to the Commission, had participated in any investigation of petitioner's activities and additionally held that the Commission did not unduly restrict petitioner's inquiry into the possible disqualification of Commissioner Woodside.[9]

9. In the *Holman* case, the court summarized its position as follows:
"To disqualify Commissioner Woodside on the record before us would be tanta-

mount to disqualifying from participation in an SEC adjudicatory proceeding all personnel from the Divisions of Corporation Finance and Trading and Exchanges

Similarly, in the case before this court, we find nothing to indicate that either Commissioners Cohen or Woodside prejudged this case because of prior staff activities, nor do we find any undue restriction upon the Exchange's inquiry into the possible disqualification of either Commissioner. We conclude that the Commission did not err in refusing to permit issuance of the subpoenas sought by the Exchange.

*Affirmed.*

without regard to the extent of their connection with the proceeding in its investigatory stages, and would tend to prevent the appointment to the Commission of persons who have had previous experience with its work. * * * The record here *does not show that Woodside was 'engaged in the performance of in-*vestigative or prosecuting functions' in any proceedings related to the present case, so as to be barred by Section 5(c) of the Administrative Procedure Act from participation in adjudicatory proceedings against the petitioner." (366 F.2d at 453)