**V. Frank MENDICINO, as Attorney General of the State of Wyoming, Complainant,**

v.

**Linden E. WHITCHURCH, Respondent.**

**Nos. 2, 5.**

Supreme Court of Wyoming.

June 3, 1977.

Gerald A. Stack, Deputy Atty. Gen., Cheyenne, for complainant.

Jack B. Speight, of Hathaway, Speight and Kunz, Cheyenne, for respondent.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

McCLINTOCK, Justice.

This matter is before the court on exceptions of Linden E. Whitchurch (respondent) to the Findings and Order of the Grievance Committee of the Wyoming State Bar (the committee) recommending respondent's disbarment for conduct in violation of the Code of Professional Responsibility, as last amended and adopted by this court by order effective January 11, 1973.[1] Five separate acts of misconduct were formally alleged in two complaints filed by the Attorney General of the State of Wyoming with the committee, and these charges, as well as a sixth act closely related to the fifth charge, were considered in two separate and successive hearings[2] held on the same day, follow-

---

1. The code so adopted is that which was adopted by the House of Delegates of the American Bar Association August 12, 1969 and amended by that body February 24, 1970. With certain amendments of our own this code was adopted by order of this court effective January 11, 1973 as the "ethical standards relating to the practice of law in this State." See Rule 20, Amended Rules Providing for the Organization and Government of the Bar Association of the Attorneys at Law of the State of Wyoming, 2A W.S.1957 (Rules).

This rule sets forth specifically only the amendments made by this court, but A.B.A.

numbering is retained and all the rules so adopted can be found in Volume VI, Martindale-Hubbell Law Directory, 1977, A.B.A. Section.

2. *Four charges of misconduct set forth in a first complaint were heard by the committee with four members present, the fifth having recused himself, in the afternoon of the hearing date. A fifth charge, filed as a second and later complaint was heard by the same four-member committee in the morning of that day and it was during the course of that hearing that respondent's counsel by his own examination brought out the conduct resulting in the sixth*

ing which Findings and Order[3] covering all six charges was drafted by the committee and filed with this court. Exceptions were filed by respondent, briefs were then filed by both respondent and the Attorney General, and a full presentation and argument was made in open court upon the record made before the committee.

After careful and independent consideration of the testimony and evidence adduced before the committee, the findings and recommendations of that committee and the arguments of counsel as contained in the able briefs and oral arguments, we are convinced that the proceedings have been fairly and constitutionally instituted and conducted, and that the respondent has been guilty of misconduct in his professional capacity, justifying and requiring disciplinary action by this court.

## THE CHARGES OF MISCONDUCT

· Records of this court disclose that following completion of the required course of instruction in the Law School of the University of Wyoming and award of a J.D. degree by that institution, respondent successfully passed the bar examination prescribed by our State Board of Law Examiners. Upon recommendation of that board he was admitted to the bar of this court[4] on July 8, 1969. The hearing transcripts show that since that date he has engaged in the practice of law in Wyoming, first employed as a full-time staff attorney for Legal Services of Natrona County, Wyoming, a private

corporation organized and operated for the purpose of furnishing free legal services to persons whose incomes do not permit retention of private counsel. He remained in that service for approximately six months and thereafter entered private practice, first in Douglas, later in Casper, and at the time of the hearing was located in Cheyenne.

In brief preliminary summary, respondent's difficulties with the committee commenced with his acceptance of employment as private counsel for the plaintiff in a divorce suit while employed with Legal Services, an agency which could possibly have furnished respondent's services without necessity for payment by the client. For those services he received payment of $200 from the client. The next charge relates to rude and insolent conduct in a trial before a justice of the peace at Douglas. The last two counts of the first complaint (Docket 2) relate to two occasions on which he wrote directly to opposing parties instead of communicating through counsel known to represent such parties.[5]

Of considerably more serious import is the charge in the second complaint (Docket 5), growing out of his representation of one Barbara J. Kaiser in divorce proceedings, *to his apparent knowledge and belief ending with the grant of an absolute decree of divorce,* and shortly thereafter representing this same woman on the basis that she was the widow of her divorced husband, who died within three weeks of the divorce.[6]

charge. The facts will be set forth in more detail later in this opinion, together with our own findings thereon.

3. The only order contained in the document is that it be filed with this court with the recommendation that respondent be disbarred.

4. Admission to the bar of this court permits the attorney to practice generally throughout the state of Wyoming. Admission to the appropriate federal courts appears to be almost automatic upon a showing of admission to and good standing in our bar although disciplinary proceedings in those courts are independently conducted. However, the action which we take in such proceedings may have considerable weight with those courts.

5. The record shows that the matters which resulted in the filing of the complaint designated as Docket 2 included another charge of misconduct but that this matter was deferred at the request of the respondent, pursuant to Rule VIII, Disciplinary Code, 2A W.S.1957 (Rules), because the subject thereof was involved in civil litigation. This rule directs that such matters be deferred provided the attorney makes reasonable effort to obtain prompt disposition thereof. The record does not disclose what has happened with respect to this claim.

6. The question whether a valid divorce was actually obtained in this case is not before us and we expressly disclaim any intention that this opinion should in any manner be construed as passing thereon. The only fact of impor-

The gist of the charge as filed was that, knowing his client to have been divorced, respondent aided her in representing herself to be a widow, entitled to widow's benefits under the Wyoming Worker's Compensation Act, and knowingly permitted her to give false testimony concerning her status under that Act.

During the course of testimony as to this charge, and without any attempt of the Attorney General to open the question, counsel for respondent presented evidence that subsequent to the divorce and death respondent prepared an affidavit for Mrs. Kaiser, to the effect that she was the surviving widow of her deceased husband and thereby entitled to claim as surviving owner certain real property which had been acquired and held by them as joint tenants with right of survivorship.[7] The committee in its findings and order treated the complaint as amended to include this act as an additional charge of misconduct, and we must consider that the committee treated it as one of the bases on which respondent's disbarment was recommended.

## CONSTITUTIONAL AND PROCEDURAL OBJECTIONS

Respondent does not substantially question the accuracy of the committee's findings but at most deals only with the interpretation that is to be put upon established facts. No claim is made of actual bias, prejudice or improper treatment on the part of the committee, nor is it alleged that the respondent was in any way unfairly treated except as he claims that the recommended punishment is harsh and inappropriate to his acts as explained by him. His principal

contention is that he has been denied due process and the argument is advanced on three grounds: That he could not be found subject to disbarment for violation of a charge of which he was not given notice prior to the disbarment hearings; that denial of the right to conduct *voir dire* examination of the members of the committee prior to taking evidence at the hearing was a denial of due process; and that the whole procedure by which the committee recommended disbarment deprived him of due process of law.

We find and hold that with the possible exception of the Kaiser affidavit all procedures of the committee have been in compliance with the rules which this court has promulgated. If, then, it is to be concluded that respondent has not had a fair hearing consistent with due process of law, it is this court, as the author of the rules, which must bear the responsibility therefor. Except as the Federal Supreme Court may consider due process under the Federal Constitution there is no other tribunal which can pass upon the questions raised by respondent and we therefore are charged with the delicate task of passing upon the merits of our own efforts in rule-making.[8] We consider respondent's contentions in inverse order.

### The Claim That the Procedure Itself Deprives Respondent of Due Process of Law

By order effective April 1, 1973 this court adopted the Disciplinary Code, Wyoming State Bar, expressly declaring that all statutes and rules theretofore pertaining to dis-

tance to this proceeding is that, as testified to by respondent, he had performed every act which he thought necessary to secure an absolute divorce for his client, and he at all pertinent times proceeded on that assumption. His only explanation of his subsequent conduct is that he thought that the parties might have remarried.

7. Again we disclaim any intention to pass upon the legal sufficiency of the affidavit or the legal status of any property owned by Mr. and Mrs. Kaiser, as joint tenants or otherwise, at the time of the divorce. We do especially note,

however, that unless the "jointly held" property was set over to Mr. Kaiser in the divorce proceedings, no fraud would be involved in Mrs. Kaiser's claiming the property as surviving joint tenant.

8. This is the first disciplinary matter in which we have been called upon to consider procedures under the new disciplinary code. We attribute this paucity of disciplinary matters to no lack of diligence upon the part of our committee or of the bar, but consider it indicative of the integrity of the practicing lawyers of this state.

barment proceedings were superseded.[9] The preamble of the Code recites that the court "* * * has inherent power to supervise the conduct of attorneys who are its officers and in futherance thereof promulgates the following rules pertaining to disciplinary enforcement," thereby reiterating the view expressed in *State Board of Law Examiners of Wyoming v. Brown*, 53 Wyo. 42, 48, 77 P.2d 626, 628 (1938) that discipline and disbarment are special proceedings "necessarily incident to the inherent power of courts to control properly their own affairs."

*In re Little,* 40 Wash.2d 421, 244 P.2d 255, 259 (1952) points out that a disciplinary proceeding is not adversary and is strictly speaking

"* * * a special proceeding peculiar to itself, in which the court, with the assistance of the bar association, inquires into the conduct of an officer of the court and a member of that association, and, if necessary, exercises its inherent power to discipline the accused." [10]

*Brown* enunciates the general principles which we think are basic to the whole intent and purpose of disciplinary proceedings, namely, that they

"* * * are not litigation between adverse parties, but simply the exercise of jurisdiction over an official whose authority to serve the public and the courts issues out of the courts themselves. Such proceedings cause an inquiry into his conduct not for the purpose of applying a remedy for a wrong done, but only for the maintenance of the purity and dignity of the courts, by removing an officer whose fitness to function has been questioned and whose unfitness shall be established. When they result in disbarment, the official affected is, of course, punished thereby, but the intrinsic nature of the whole matter involves a determination *in the public interest whether the person whose conduct is the subject of the inquiry should be permitted to practice the profession of law.* * * *" 53 Wyo. at 48, 77 P.2d at 628–629. (Emphasis supplied) [11]

*The disciplinary procedure.*

Rules IV and V of the Disciplinary Code set forth the procedure to be followed by the committee in initiating and recommending disciplinary action against attorneys:

1. The Grievance Committee either on its own motion or upon complaint by any person investigates or causes to be investigated the conduct of an attorney. Rule IV(c)(1); Rule V(a) and (b). This investigation can only be initiated by the committee and the preliminary investigation can either be done by the committee or attorneys appointed by the committee. All officers of the bar, member attorneys and judges are required to be alert to claims of improper conduct by an attorney and forward such claims to the committee.

---

**9.** 2A W.S.1957 (Rules). Prior to the adoption of this code, disciplinary matters had been handled under a statutory procedure whereunder serious grievances were formally heard by a tribunal consisting of three district judges who filed their report and recommendations with this court, which took the final action. Section 33–56 et seq., W.S.1957. At one time the accused attorney was entitled to demand jury, § 1, Ch. 51, S.L. of Wyoming 1925, but this right was eliminated by Ch. 112, § 1, S.L. of Wyoming 1937.

**10.** This is the description which the majority of jurisdictions choose to apply to disbarment proceedings. See *State v. Turner,* 217 Kan. 574, 538 P.2d 966, 973 (1975); *Yokozeki v. State Bar,* 11 Cal.3d 436, 113 Cal.Rptr. 602, 521 P.2d 858, 865 (1974), cert. denied 419 U.S. 900, 95 S.Ct. 183, 42 L.Ed.2d 145 (1974); *State ex rel. Oklahoma Bar Association v. Brandon,* 450 P.2d 824, 828 (Okl.1969); *Toft v. Ketchum,* 18 N.J. 280, 113 A.2d 671, 674, 52 A.L.R.2d 1208 (1955); 7 C.J.S. Attorney and Client § 28, pp. 770–771.

**11.** See *Black v. State Bar of California,* 7 Cal.3d 676, 103 Cal.Rptr. 288, 293, 499 P.2d 968, 973 (1972), where the principle is expressed thusly: " 'The purpose of such a proceeding is to determine the fitness of an officer of the court to continue in *that* capacity, and it has been said the disbarment of attorneys is not intended for the punishment of the individual, but for the protection of the courts and the legal profession. * * *' " Quotation from *In re Vaughan,* 189 Cal. 491, 496, 209 P. 353, 355 (1922), rehearing denied. Decisions expressing this same view are legion.

2. After investigation, the committee determines whether the complaint is meritorious. Rule V(c)(1) and (2); Rule IV(c)(5). If so found, the committee then causes written findings and its proposed action to be sent to the attorney involved. Rule V(c)(2).

3. The attorney then has 20 days to accede to the findings or to request an informal hearing. If the attorney fails to respond to the committee, he is deemed "to be [in] agreement with the findings and proposed action of the Committee." Rule V(c)(3).

4. After an informal hearing if requested, the committee may, if it finds the charges unfounded and unproven, dismiss the charge. Such dismissal is subject to the right of the complaining party to petition this court for a review. If the committee finds merit in the complaint, it may privately reprimand, recommend public reprimand to the court, or institute formal disciplinary proceedings for suspension or disbarment. Rule V(c)(4).

5. The committee upon making a determination to institute formal disciplinary proceedings advises the Attorney General to take all the necessary steps in that regard. Rule V(e).

6. Formal hearings are brought before the committee which acts as the tribunal and conducts the hearing as if it were a civil trial. If the committee finds the charges proved by substantial, clear, convincing and satisfactory evidence, it shall recommend to this court discipline of the attorney and the extent thereof. Rule V(h).

It is apparent from this summary that by this system the aggrieved client is assured of ready accessibility to the disciplinary procedures since the entire bench and bar are charged with responsibility to respond to complaints and report claims of misconduct. It permits even the most minor or unworthy claim to gain the attention of a body of lawyers interested only in the good name of the bar, even though disposition thereof may be in summary fashion. The committee may dismiss claims as unfounded; it may do so even after formal hearing of serious charges, subject to review by this court on application of the complainant. It may issue a private reprimand or informal admonition, even after formal hearing, but may not impose any punishment of the rank of public reprimand or higher, such action being left entirely to this court upon the recommendation of the committee, if that committee finds the charges proved by substantial, clear and convincing evidence. The committee is thus invested with a substantial amount of discretion weighted in favor of the attorney and not against him. A desirable feature, we think, is that except as it may be requested by the attorney there is no public airing of the grievance until the matter is submitted for final action of this court. This not only protects the attorney from unwelcome and damaging publicity as to an unbased charge or one growing out of a misunderstanding, but it protects witnesses and citizen complainants from intimidation [12] while at the same time giving the attorney the right to public vindication. It also assures that serious infractions receive the public notice that assures the general public that their interests are being protected.

*The relation of the Grievance Committee to this court.*

Before considering respondent's specific arguments against our procedure we would consider the relation of the committee to this court. Since the power to discipline is in the court, it is logical that any function exercised by the committee should be only as an arm of the court. This is the general interpretation of the procedures in other states. *Toft v. Ketchum,* 18 N.J. 280, 113 A.2d 671, 674, 52 A.L.R.2d 1208 (1955) refers to grievance committees as

" * * * arms of the court which perform the very important functions of re-

---

12. See *McCartney v. Commission on Judicial Qualifications,* 12 Cal.3d 512, 116 Cal.Rptr. 260, 526 P.2d 268, 274 (1974).

ceiving complaints, investigating them, holding hearings on them, and then presenting their findings to the court. The Supreme Court, however, has at all times full control over the proceedings and regardless of the conclusion of the committee a full report must be submitted to the court, R.R. 1:16–4(h), which, although giving due weight to the findings and conclusions of the committee, has the sole responsibility of deciding whether the attorney in question should be disciplined. * * *"

In *In re Application of Harper,* 84 So.2d 700, 706 (Fla.1956), a case which dealt primarily with circumstances under which an attorney may resign from the bar, the Supreme Court of Florida discussed other aspects of disciplinary proceedings:

"Disciplinary proceedings by The Florida Bar are essentially a function of this Court. While the local committees and the Board of Governors are not technically judicial tribunals, their findings and recommendations should be considered as those of an intermediate agency of this Court. They are in fact an arm of this Court dealing with a vital function of the Court and under its exclusive jurisdiction. See *Velkov v. Superior Court in and for Los Angeles County,* 40 Cal.2d 289, 253 P.2d 25, 35 A.L.R.2d 1348. While the power to render the ultimate judgment in these cases is vested in this Court, the findings and recommendations of the constituted officers of The Florida Bar are entitled to receive due consideration and are of persuasive force. *Copren v. State Bar,* 64 Nev. 364, 183 P.2d 833, 173 A.L.R. 284." (The foregoing is quoted with approval in *State v. Rubin,* 142 So.2d 65, 68 (Fla.1962).)

In reviewing its supplanted disciplinary procedure, this court has described the proceedings conducted by the three-judge district court panel as advisory to the Supreme Court. *State Board of Law Examiners v. Spriggs,* 61 Wyo. 70, 77, 155 P.2d 285, 287 (1945); *State Board of Law Examiners of Wyoming v. Brown,* supra. Section 1 of Ch. 51, S.L. of Wyoming, 1925 had con-

tained a provision which required a jury trial on the facts when demanded by the accused's attorney. In *State Board of Law Examiners v. Phelan,* 43 Wyo. 481, 5 P.2d 263, 78 A.L.R. 1317 (1931) this court held that when a jury trial is requested in a disciplinary proceeding the verdict of the jury has the same effect in settling issues of fact as a verdict rendered in a civil action. This court opined that while on review it may enter such judgment as the facts may warrant, the legislative directive was not intended to qualify an accused's right of trial of the facts by a jury. Chief Justice Kimball, however, did state in dictum that under a different procedure the findings may only be advisory to this court:

" * * * It may, perhaps, properly be said that the whole of the proceedings in the district court are advisory to this court, for it is on the record of those proceedings that we must render the judgment or remand the case. * * * If the intention had been to provide that the original hearing should be had for the mere purpose of taking the evidence for transmission to this court with advisory findings, it would have been easy to find in the laws of other states precedents for a procedure much simpler than the one adopted by our law. *And if the law provided that the evidence be taken by a referee, or a member of the board of law examiners, and then transmitted to this court with findings, it might with good reason be contended that the findings were merely advisory.*" (Emphasis supplied) 5 P.2d at 264.

Inasmuch as the jury-trial-demand provision was repealed by Ch. 112, S.L. of Wyoming, 1937, this italicized language was the apparent basis for the rule stated in the *Brown* and *Spriggs* decisions. We think it clear and so hold that while the findings of the committee are entitled to and have received from this court the most serious consideration, the findings and rulings herein, as we shall subsequently emphasize, are of this court and not of the committee.

*Respondent's claim that the procedure deprives him of his constitutional right to remain silent.*

■ Respondent attacks the rules themselves on two grounds, the first of which is his claim that provisions for informal conference require the accused attorney to "consent to an informal hearing where his due process rights are not applied." It is strongly urged that in this way the attorney is denied his constitutional right to remain silent. As expressed by respondent, under our procedure

> " * * * the attorney feels compelled to cooperate with the informal hearing or he will be found to be 'in agreement with the findings and proposed action of the Committee.' Rule V, *supra*. This is a costly penalty which can readily force the attorney to give up his constitutional right to remain silent. Further, his decision to remain silent very likely would have a prejudicially bad effect on the Grievance Committee's ultimate determination of the charges against the attorney."

We first observe that the denial of any accusation—such as the entry of a plea of not guilty in a criminal case—has never been taken to be a waiver of the right to remain silent; it has never been taken as an admission of guilt. The attorney under investigation is therefore under no compulsion either to accept the findings or ask for an informal conference at which he might trap himself with his own words. All that is required of him is that he advise the committee that he does not accede to the proposed findings and proposed action. Whatever the proposed action, it is only failure to respond to the committee which results in any admission. This is the usual result of any judicial default. We also observe that request for an informal conference does not require the attorney to speak; he may ask for further facts; he may object that the proposed findings, only tentative at this stage of the proceeding, are not sustained by the facts as they have been presented to the committee. We must therefore reject respondent's assertion that the request for informal conference would cost the attorney his constitutional right to remain silent or even threaten risk thereof.

*Respondent's claim that there is an unconstitutional joinder of investigative, accusatory and adjudicatory functions.*

■ Respondent's second ground for attack upon the disciplinary procedure itself results from what he terms the improper combination of investigative, accusatory and adjudicatory functions in the same committee. His counsel asserts that our system "can create" a situation condemned by the Supreme Court of the United States in *Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). As we read that case counsel's confidence is misplaced. The court was there concerned with a situation where the Wisconsin Medical Examining Board, statutorily charged with the duty of enforcing a code of professional conduct governing physicians, and authorized to investigate, warn and reprimand, temporarily suspend licenses and to institute criminal action to revoke license when it finds cause therefor under any criminal or revocation statutes, commenced an investigation of Larkin's activities and went so far as to enter formal findings of misconduct demonstrating probable cause for an action to revoke license. It also temporarily suspended the doctor's license. The Supreme Court reversed a three-judge trial court's decision [13] that the board's temporary suspension of license at its own contested hearing on charges evolving from its own investigation would constitute a denial of licensee's rights to procedural due process.

The Supreme Court proceeds from the undeniable precept that a " 'fair trial in a

---

13. *Larkin v. Withrow,* 368 F.Supp. 796, 798 (E.D.Wis.1973). " * * * The state medical examining board does not qualify as such a[n] [independent] decisionmaker. It cannot properly rule with regard to the merits of the same charges it investigated and, as in this case, presented to the district attorney." This language of the three-judge court, reversed by the Supreme Court, plainly shows the pertinence of the case to ours.

fair tribunal is a basic requirement of due process.' " [14] It cites instances in which "experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Withrow*, 421 U.S. at 46, 95 S.Ct. at 1464, 43 L.Ed.2d at 723. Among these instances are cases where the adjudicator has a pecuniary interest in the outcome and in which he has been the target of abuse or criticism from the party before him. But as the court continues, with this most pertinent paragraph, 421 U.S. at 47, 95 S.Ct. at 1464, 43 L.Ed.2d at 723–724:

"The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented."

We construe counsel's contention to be that the mere combination of investigative, accusatory and adjudicatory functions in the committee must be conclusively considered to have created a situation where it was psychologically impossible for the committee to fail to have bias or to have prejudged the matter. *Withrow* does not support this contention. *In re Murchison, supra*, n. 14, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955), also cited by counsel, involves the situation mentioned in *Withrow* where the "target" of the abuse has accused and then tried the person before him. Also cited in *Withrow* is *Federal Trade Commission v. Cement Institute*, 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948),

where there was much more opportunity for prejudgment and bias because of earlier familiarity with the case, yet the court held that there was no denial of due process. *National Labor Relations Board v. Donnelly Garment Co.*, 330 U.S. 219, 236–237, 67 S.Ct. 756, 764, 91 L.Ed. 854, 870 (1947) reversed the decision of the Court of Appeals in *Donnelly Garment Co. v. National Labor Relations Board*, 151 F.2d 854, 870 (8 Cir. 1945), which had held that it would be unfair to require the parties to try "issues of fact to those who had prejudged them." The Supreme Court recognized that trial judges were not disqualified because they had been reversed on earlier rulings and stated:

"We find no warrant for imposing upon administrative agencies a stiffer rule, whereby examiners would be disentitled to sit because they ruled strongly against a party in the first hearing. * * * " 330 U.S. at 236–237, 67 S.Ct. at 765.

More recently and in *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966), it was said:

"The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case. * * * "

*Withrow* concluded on this point:

"We are of the view, therefore, that the District Court was in error when it entered the restraining order against the Board's contested hearing and when it granted the preliminary injunction based on the untenable view that it would be unconstitutional for the Board to suspend appellee's license 'at its own contested hearing on charges evolving from its own investigation. . . .' The contested hearing should have been permitted to proceed." 421 U.S. at 55, 95 S.Ct. at 1468, 43 L.Ed.2d at 728.

14. 421 U.S. at 46, 95 S.Ct. at 1464, 43 L.Ed.2d at 723, quoting from *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955).

The Supreme Court of California, in a decision reviewing action of its Commission on Judicial Qualifications under a procedure more elaborate than our disciplinary code, had this to say in reply to argument that the proceedings were constitutionally unacceptable:

" * * * We similarly decline to assume that the Commission members entertained a prejudice toward petitioner merely because, as he asserts, they considered the field reports of the Attorney General's special agents during the investigatory stages of the proceedings. No fundamental unfairness or constitutional infirmity is inherent in such a combination of investigative and adjudicative functions." *McCartney v. Commission on Judicial Qualifications*, 12 Cal.3d 512, 116 Cal.Rptr. 260, 267, 526 P.2d 268, 275, n. 7 (1974).

Another case most pertinent to the question raised by respondent is *Duffield v. Charleston Area Medical Center, Inc.*, 503 F.2d 512, 517 (4 Cir. 1974) where a surgeon had filed suit in federal district court contesting the removal of his hospital privileges by the defendant board. At the board hearing he had been permitted to examine the members of the board who were formally hearing his case. He did not at that time attempt to disqualify the board but did so later. The Court of Appeals, recognizing that the attack was untimely and that disqualification of board members could be waived, chose instead to predicate the decision on the basis that there was no disqualification of the board. The board, prior to the formal hearing, had received and conditionally approved the recommendation of the Department of Surgery against renewal of hospital privileges, this being the action upon which plaintiff predicated his claim of bias. However, the court said, 503 F.2d at 519:

" * * * No evidence was taken by the Board at that stage. The decision taken was purely tentative and conditional; it became *final only if the appellant voluntarily chose to accept the recommendation and not to contest it.* It may be accurately described as an administrative step in bringing the issue to a head, much as the issuance of a show cause order in connection with an application for preliminary injunctive relief in judicial proceedings sets the stage for a valid hearing on the issues presented by such application. * * * "

After considering the course of the hearing at length the court concluded:

" * * * The hearing was fair and the rights of the appellant were not prejudiced by any valid evidence of partiality on the part of the members of the Committee. The District Court accordingly properly granted the Hospital's motion."

We must agree that if we have by rule provided an unconstitutional proceeding, it goes to the heart of the whole matter and we construe respondent's approach to this case as being such an attack. We think that the argument has been rejected in numerous cases, see *F.T.C. v. Cinderella Cover and Finishing Schools, Inc.*, 131 U.S. App.D.C. 331, 404 F.2d 1308, 1315 (1968), and cases there cited, but the decisions in *Withrow* and *McCartney* are of particular importance and sustain the basic principle which we announce, namely, that the combination of the investigative, accusatory and adjudicatory functions [15] as set forth in

**15.** We would also point out that under our rules only the investigatory function may be said to be vested completely in the committee and it is probable that most of this work is done through other attorneys. As to the accusation, the committee turns the matter over to the attorney general, with such material as it has accumulated, and he draws the formal complaint and thereafter acts as counsel. In the adjudicatory phase the committee considers the evidence, makes findings therefrom and recommends action to this court, in whom the final and only complete authority is reposed. At the risk of being redundant we reiterate that while the work of the committee, in its investigation, conduct of the hearing, and its recommendations to this court, is very important and an essential function of the disciplinary process, it acts in an advisory capacity and it is this court alone that makes the adjudication.

our rules does not constitute a denial of due process.

### The Claim That Refusal of Respondent's Request to Examine the Members of the Committee on Voir Dire Denied Due Process

In each separate hearing respondent first requested leave to examine the members of the committee on *voir dire* as to their possible bias or prejudice.[16] This request was made without claim of the existence of any such attitude and without any attempt to show by previous acts or declarations of any committee member that respondent had reason to believe the committee could not afford him a fair hearing, make proper findings of fact, and recommend to this court the action to be taken pursuant to those findings. The request, briefly made, was as briefly denied. Respondent does not now seriously question the findings and his only substantive objection to the recommendations is to the claimed harshness thereof. We have examined the record and find it devoid of any fact demonstrating bias or prejudice of any member or showing why respondent might have reason to fear any member would bear him ill will or in any way seek to deny him a fair hearing.

Notwithstanding this lack of any factual showing of bias or prejudice or that he has been unfairly treated by the committee, and notwithstanding the absence of any objective basis upon which to conclude that he has in any way been denied a full, complete and fair hearing upon the charges against him, respondent reiterates the undenied principle that "a fair trial in a fair tribunal is a basic requirement of due process"[17] and by pure assertion attempts to bring his case within that principle. As we understand the argument it is that unless each member of the committee has in response to questioning by counsel affirmed the nonexistence of any personal or financial relationship with respondent, that he has formed no opinion of respondent that would influence his ability to judge the matter, and that his previous exposure to the evidence in the investigatory phase of the matter has not and will not influence his decision at the full hearing, it must follow that there was not had a fair hearing and respondent has been denied due process. As counsel concludes:

> " * * * The evidence produced in voir dire might have shown that the procedure followed by the Grievance Committee in this disbarment was tainted and biased the Committee, thereby depriving Respondent of due process of law."

Perhaps we do not entirely understand this argument, but we confess ourselves unable to conclude that the mere denial of the request for examination was a tainted procedure or that the procedure followed by the committee resulted in bias. If disqualifying bias or prejudice was present, it must have been in existence at the time the question was raised; and respondent's only valid complaint would be that by reason of the committee's refusal to be questioned he was unable to expose an actual and existing bias or prejudice on the part of the committee or some of its members and further, that by reason of this bias or prejudice he did not receive a fair hearing. Counsel has not cited and our own research has failed to disclose any decisional or other authority so equating the exercise of *voir dire* with fair

---

**16.** Except as a dismissed high school teacher claimed the right to conduct *voir dire* examination of members of a school board holding a hearing on the question whether his contract should be renewed, *Board of Trustees, Laramie County School District No. 1 v. Spiegel*, 549 P.2d 1161 (Wyo.1976), this court does not appear previously to have considered the contention that in a hearing before an administrative board or special committee such as is involved in this case, a party is constitutionally or otherwise entitled to examine the members of the

hearing tribunal as to possible bias or prejudice. The question was not decided in that case, two members of the court favoring such procedure, two being opposed thereto and the fifth, the writer of this opinion, expressing the view that determination of the question was unnecessary to the disposition of the case. It appears that the question is now directly and unavoidably presented.

**17.** See text and citations at n. 14, supra.

trial[18] so that the denial of the former is equally a denial of the latter and we do not think the few authorities cited by him even suggest that possibility.

Our own decision in *Fallon v. Wyoming State Board of Medical Examiners*, 441 P.2d 322, 327 (1968) says only that a doctor facing disciplinary proceedings is entitled to a fair hearing and that upon the objective facts of that case, clearly established by the evidence and having nothing to do with examination of the members of the board, the doctor had not received such a fair hearing. *Abrams v. Jones*, 35 Idaho 532, 207 P. 724, 727 (1922) held that it was unfair to submit an accused dentist to a hearing before the committee "which had at least tentatively prejudged the matter as evidenced by the charges which it had brought against respondent." We think this much too broad a holding in light of *Withrow*, supra, which we accept as authoritative on the question. Neither *Fallon* nor *Abrams* in any way holds or suggests that *voir dire* of the hearing panel is an essential element of a fair hearing. We have also examined cited paragraph 12.04 from 2 Davis Administrative Law Treatise, which paragraph is generally devoted to a discussion of the rule of necessity. We observe that the only statement pertinent to this case—and only partially so—is that "Courts can hold that a system calling for adjudication by officers who are disqualified is a denial of due process of law." We take no exception to this statement but it is not authority that *voir dire* of the hearing panel is a necessary element of due process.[19]

In an attempt to give respondent the full and fair consideration to which he as a member of the bar of this court is entitled, we have reviewed the question of *voir dire* in other contexts. On the premise that a fair hearing before an unbiased and unprejudiced tribunal is as essential in a judicial proceeding as in an administrative matter or the special proceeding here involved, we first consider the disqualification of judges. We could not claim for judges any immunity from the same bias or prejudice[20] that may exist as to jurors, administrative officers or special referees. While we have found complete acceptance of the principle that a fair hearing before a fair tribunal is at all times applicable to judicial proceedings, we have found no authority holding the right of *voir dire* of the judge, administrative officer or referee is an essential element of fair hearing. So far as we have been able to inform ourselves, it is only in the impaneling of a jury to hear a civil or criminal case that *voir dire* examination is permitted and then only as a result of statute or rule.

Federal and state statutes or rules permit the disqualification of trial judges, usually upon affidavit. A federal trial judge may be disqualified by affidavit of a litigant that the judge has a "personal bias or prejudice either against him or in favor of any adverse party," but only one such affidavit can be made, 28 U.S.C. § 144. Any justice or judge of the United States is by statute

18. In *Spiegel*, supra, n. 15, 549 P.2d at 1166, Mr. Justice Rose, speaking for himself and Judge Armstrong, asks this question:

"How can it be determined that the members of an administrative board are not prejudiced against an accused unless his or her attorney is permitted to inquire into the question?" At the inception of any hearing it may indeed be difficult although it seems to this writer that any attorney who has properly prepared for the hearing must have had some indications of possible prejudgment of the case, too close a relationship with one or the other parties, or other basis of personal bias. The present opinion should not be considered as a denial of the right to bring such possible prejudice to the attention both of the hearing panel and of a reviewing court.

19. The only instance which we have found in which a hearing tribunal permitted *voir dire* examination of its members is *Duffield v. Charleston Area Medical Center, Inc.*, 503 F.2d 512 (4 Cir. 1974) previously cited by us on the question whether the committee was disqualified by reason of its investigatory function. The opinion in no way constitutes authority that *voir dire* is a matter of constitutional right.

20. " * * * Much harm is done by the myth that, merely by putting on a black robe and taking the oath of office as a judge, a man ceases to be human and strips himself of all predilections, becomes a passionless thinking machine. * * * " Frank, J., *In re J. P. Linahan, Inc.*, 138 F.2d 650, 652–653 (2 Cir. 1943.)

now required to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455. This statute does not seem to permit the filing of an affidavit of disqualification against a justice of the Supreme Court of the United States, the decision being left to the individual justice.[21] Similarly, there is no provision for disqualification of a justice of this court although each justice would be subject to the provisions of the Code of Judicial Conduct adopted September 4, 1973, and the experience of this court is that justices frequently recuse themselves. District judges on timely filing may be peremptorily disqualified and there is further provision for their recusal on filing of a factual affidavit, Rule 40.1(b), W.R.C.P. In no instance, federal or state, do we find provision for examination of judges or justices on *voir dire*.

■ In the absence of decisional or legislative authority sustaining the right to *voir dire* examination of the hearing tribunal we would be fully justified in rejecting respondent's claim of that right as a matter of due process. But we would not on that basis alone leave the impression that a litigant must be at the mercy of a biased tribunal. The fundamental requisite of due process is the opportunity to be heard at a meaningful time and in a meaningful manner, *Goldberg v. Kelly*, 397 U.S. 254, 257, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and denial of the right to challenge the tribunal or its members could result in denial of meaningful hearing. Challenges to administrative or special tribunals should then be permissible just as they are to judges but neither on judicial authority nor principle must it be considered that denial of the right to examine the panel on *voir dire* is ipso facto a denial of a fair hearing.[22]

The right of challenge, the right to a fair hearing, can be enforced in other ways. Usually, this is done by promptly raising the claim of bias on the part of the panel or a member thereof and then raising the question in the review proceedings. This was the attitude of the court in *Fish v. East*, 114 F.2d 177, 200 (10 Cir. 1940) holding that a party attempting to disqualify the bankruptcy referee who had heard the matter had no right of challenge except by petition for review. In *Berkshire Employees Ass'n of Berkshire Knitting Mills v. National Labor Relations Board*, 121 F.2d 235, 239 (3 Cir. 1941) where petitioners sought to review decision of the N.L.R.B., a motion filed with the reviewing court seeking first to adduce evidence as to improper activity of one of the board's members, was granted and the case referred back to the board to

" * * * receive the evidence and determine for itself whether, if the facts are established, one of its members is not disqualified from further participation in this case. If such finding is made the entire case will be reconsidered by the members not so disqualified."

In *Amos Treat & Co. v. Securities and Exchange Commission*, 113 U.S.App.D.C. 100, 306 F.2d 260, 267 (1962) the court said that not only must the proceedings be attended with every element of fairness "but with the very appearance of complete fair-

21. *Laird v. Tatum*, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), where Mr. Justice Rehnquist sets forth his reasons for refusing to recuse himself pursuant to motion of the respondents in the case. His participation in the case and vote with the majority resulted in a 5–4 reversal of the decision of the Court of Appeals, *Tatum v. Laird*, 144 U.S.App.D.C. 72, 444 F.2d 947 (1971). The widespread attention given to this refusal is noted in Disqualification of Judges and Justices in the Federal Courts, 86 Harv.L.Rev. 736. For another extensive discussion of the disqualification of federal judges see opinion of District Judge Hemphill in *Du-*

*plan Corporation v. Deering Milliken Research Corporation*, 400 F.Supp. 497 (D.C.S.C.1975).

22. The annotation in Harvard Law Review, supra n. 21, discusses at some length the efforts of the American Bar Association, through the Code of Judicial Conduct to improve the standards relating to the disqualification of a judge for interest, bias or prejudice. It is referred to as a new approach yet we find nothing in that code or in the note that indicates that *voir dire* examination is a necessary element in any improved procedure.

ness."[23] Injunction against continuing a proceeding then in progress was ordered but with the provision that if the commission should advise the district court that it

" * * * has instituted a full evidentiary hearing for the purpose of determining upon a complete record whether or not any Commissioner should have been disqualified for the reasons we have discussed because of prior staff service * * *."

and the full record of such proceeding should then be submitted to the district court, the injunction could be dissolved. Nothing is said about the right to *voir dire* examination and the record considered by the Court of Appeals quite clearly showed basis for claim of bias and prejudice.

The factual situation in *Federal Home Loan Bank Board v. Long Beach Federal Savings & Loan Association*, 295 F.2d 403, 409 (9 Cir. 1961) is somewhat involved, but the court observes that the board in considering whether the affairs of the association should be placed in the hands of a receiver should receive evidence of bias or prejudice of any member of the board and

" * * * determine for itself whether, if the facts are established, a minority member is disqualified from participation in the final decision. * * * Evidence of bias or prejudice on the part of Board members would also be relevant for consideration by a court called upon to review a final Board order."

We can conclude from these authorities that ample protection for a litigant's right of fair trial exists without resort to the uncertain procedure of examining the members of the committee or hearing panel as to their possible bias and prejudice. We think that had such an attitude been

23. We agree with this observation and ask where in the case before us is there even a hint of unfairness? In *Amos Treat* there were substantial claims of unfairness in that the disqualified commissioner had actively participated as a member of the agency staff. As we read the decision it expressly permits, as authorized by Congress, a member of the commission to participate in the decision that an investigation go forward and even that charges be filed, and

present in this committee, the record would not be completely devoid of evidence thereof. Since the committee acts as a referee and this court must independently pass upon all evidence and reach its independent judgment thereon, respondent is well protected from capricious, arbitrary or prejudicial findings by the committee. Without minimizing the importance of a fair hearing before a fair tribunal, and in the absence of a record showing at least a minimal factual basis for reasonable claim of bias or prejudice, we cannot and will not presume that a fair hearing was not held. We must therefore reject respondent's argument that the mere refusal to permit *voir dire* examination denied respondent a fair hearing and thereby denied due process.

#### The Claim That Respondent Was Denied Due Process by Consideration Without Proper Notice of the Charge Not Included in the Original Complaints

■ Respondent's third contention concerning unconstitutional denial of due process goes only to the additional count, brought into the findings and order by the committee after the matter had been voluntarily brought into the proceedings by respondent himself. It is claimed that for the committee to consider this matter, without previous notice of the charge having been given to respondent, is to deny him due process under the decision in *In re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968). We think that there is a substantial difference between the facts in that case and in this in that *Ruffalo*[24] there testified to certain events in the belief that they were defensive to a particular charge that had been made against him. The court then made a charge out of this explanation. It was said:

then participate in the ultimate decisional process.

24. The observation in *Ruffalo* that "[T]hese are adversary proceedings of a quasi-criminal nature," 390 U.S. at 551, 88 S.Ct. at 1226, is not entirely in line with the view of a number of state courts or of this court (see p. 464, supra) but we do consider the procedure as having most serious aspects since one may thereby be deprived of his means of livelihood.

" * * * The charge must be known before the proceedings commence. They become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused. He can then be given no opportunity to expunge the earlier statements and start afresh." 390 U.S. at 551, 88 S.Ct. at 1226.

We fail to see how it can be said that the charges have become a trap in this case. Respondent's counsel made inquiry of the witness Kaiser as to this matter and himself introduced the exhibit which was the subject of the inquiry. It was in no way brought up as a defense to the actual charge being tried, that is that respondent had aided Mrs. Kaiser in giving false testimony in the compensation matter. It in no way amounted to an explanation of or excuse for the alleged wrongful conduct but was an additional example of respondent's failure properly to guide and advise his client. However, we are willing to accept the broad outline of the decision and concede that in the interest of complete fairness respondent should have been formally charged with misconduct in this respect before it could be included as a separate item of misconduct against him.

It is also apparent that the record is not in very satisfactory condition as to what actually happened. While respondent's misconduct, if any, would be predicated on his rendering assistance to Mrs. Kaiser to claim that she was the surviving widow, knowing or believing that she had been divorced, it is not clear just what resulted from the preparation of the affidavit. The divorce decree refers to and sets over to the husband as his sole property "that residential home property located at 1604 Holly, Casper, Wyoming" while the affidavit refers to "Lot 141—Meadow Park Addition, City of Casper, County of Natrona, State of Wyoming." While evidence of the identity of the two properties would be admissible, we cannot conjecture as to whether they are the same. If the property described in the affidavit was different from that described in the decree of divorce, and had been held in joint tenancy, it is highly unlikely that any unethical conduct would be

involved in the preparation of the affidavit, since a joint tenancy does not depend upon the marital status of the joint tenants and would not be severed or otherwise affected by divorce. Probably because evidence with respect to this phase of the case was a complete surprise to the Deputy Attorney General, the matter was not completely presented in the committee hearing and we think that if the committee considers that the preparation of this affidavit constitutes additional basis for disciplinary action against respondent, it should be the subject of a separate charge, requiring notice and hearing.

### The Proceedings Before the Committee Were Fair in All Respects

The fact that we have found the procedure prescribed by our rules to be constitutionally fair would not prevent us from determining in a particular case that there may not have been a fair application of those rules. Particularly with reference to the combination of functions of the committee it was said in *Withrow,* 421 U.S. at 58, 95 S.Ct. at 1470:

"That the combination of investigative and adjudicative functions does not, without more, constitute a due process violation, does not, of course, preclude a court from determining from the special facts and circumstances present in the case before it that the risk of unfairness is intolerably high. Findings of that kind made by judges with special insights into local realities are entitled to respect, but injunctions resting on such factors should be accompanied by at least the minimum findings required by Rules 52(a) and 65(d)."

Respondent does not even suggest that he was unfairly treated as a result of what we have said to be a partial combination of functions in the committee. There is no complaint of his treatment by the committee, the Attorney General's office or anyone assisting in the investigation. There is therefore no basis to conclude, within the meaning of the quotation from *Withrow*

that the combination of functions has under the special facts of this case resulted in unfair proceeding. We have independently examined the proceedings and conclude that they were in all respects fairly conducted and respondent has had every benefit and protection to which he was reasonably entitled.

## SUFFICIENCY OF EVIDENCE OF MISCONDUCT

### The Standard of Review of the Committee's Findings and Recommendations

Respondent broadly asserts that the evidence in this case does not justify discipline and attacks the findings and recommendations of the committee under the standards by which the decisions of administrative agencies are to be tested. Judged on that basis, we think the committee has not acted in excess of its powers, its action was not procured by fraud, is in conformity with law, and its findings are supported by substantial evidence, all in conformity with § 9–276.32(c), W.S.1957, 1975 Cum.Supp.

 However, we do not think that the Administrative Procedure Act is pertinent to this proceeding. As we have heretofore indicated, we consider that this is a special proceeding within the sole jurisdiction of this court, and that the committee has acted only as an arm of this court, i. e. a referee, in taking the evidence and making findings and recommendations to this court. In the exercise of the inherent power of the court to consider and pass upon the conduct of its officers, and consistently with the rules of procedure which we have set up, this court must be satisfied that there is substantial, clear, convincing, and satisfactory evidence to sustain the findings of the committee. But we also have a higher duty to perform in passing upon the evidence claimed to justify disciplinary action than merely to say that there is evidence which if believed by the committee justified its recommendations. That would be satisfactory in the case in court review of administrative action but the committee in this case has not acted and does not act as an independent administrative agency whose decisions are free of judicial interference, provided only that required legal amenities have been observed. In the usual administrative agency case, the agency has considered the evidence and reached certain conclusions. We are required to recognize, respect and enforce those administrative decisions as long as they are in conformity with law, not arbitrary or capricious, and if there is substantial evidence to support them. In the case before us we are inherently, constitutionally, statutorily, and by our own rules charged with the supervision of the attorneys who practice in our courts and we must examine the evidence, make the findings, determine whether there has been an infraction of the proper standards of conduct, and impose the discipline which we consider appropriate. As was said by the Supreme Court of California in *Emslie v. State Bar of California,* 11 Cal.3d 210, 113 Cal.Rptr. 175, 180, 520 P.2d 991, 996 (1974):

" * * * Although we give great weight to the local committee's findings that resolve conflicts in the testimony both the board and this court reach an independent judgment on the record before it. * * * "

Consistently with our recognition of this duty we have by separate instrument made findings of fact, conclusions of law and judgment which we this day enter.

### The Findings are Sustained by Substantial, Clear, Convincing Evidence and We Independently Find in Essential Conformity Therewith

 In support of his argument that the findings of the committee are not supported by substantial evidence so that the order is arbitrary, capricious and an abuse of discretion, respondent correctly cites previous rulings of this court applying such tests to the action of administrative agencies, but fails to show their pertinence to his case. He objects to the form of the findings of the committee as not being of the basic facts. We do not understand how findings could be more basic than that respondent, while engaged as an attorney for Legal Services, assigned to handle a particular case as a

free service to the client, requested and received payment for services as a privately retained attorney in connection with the divorce proceedings; or that in the course of a trial in justice of the peace court he engaged in undignified and discourteous conduct to the tribunal by verbally abusing and ridiculing the presiding justice and displaying contempt for her court; or that with knowledge that other parties were represented by counsel, he contacted the other party directly, ignoring such counsel. From our own examination of the record we have determined generally that the findings with respect to Docket 2 are sufficient and sustained by substantial evidence, without refutation or justification of his action by respondent.

We hold that the findings of the committee with respect to the granting of a divorce to Barbara J. Kaiser and respondent's subsequent conduct with respect thereto are substantially correct, the only error therein being in the finding that respondent "well knew that a final decree of divorce had been signed *and entered as hereinabove mentioned, but advised the said Barbara J. Kaiser that she was still the wife of Robert R. Kaiser at the time of his death.*" (Emphasis supplied) In lieu of such finding and from our own examination of the record we find that no entry of the decree was made by the clerk of the district court for either Natrona or Converse Counties, Wyoming, and that the same has never been entered. We also find that while Mrs. Kaiser testified that respondent had at some undesignated time told her "something to the effect" she was not divorced, the evidence is not sufficiently clearcut to demand a finding to that effect. Out of consideration for the gravity of the charge and feeling that respondent should not on dubious evidence be found guilty of conduct which would dictate the most stringent punishment by this court, we think that we should amend this finding to eliminate the italicized portion thereof. Under the view we take of

the case, the important and uncontrovertible finding must be that respondent prosecuted the divorce proceedings to the point of having the judge sign the decree and then filed that decree with what he mistakenly thought was the appropriate office; that as he understood it, a full, final and absolute divorce was thus obtained. He frankly says that he considered the parties legally divorced and justifies his future action only because Mrs. Kaiser either advised him that they had remarried or that he assumed that fact. We find this explanation completely lacking in substance and insufficient to justify his actions. Just as he knew of cases where divorced parties had remarried, he must also have known that many couples resume living together without benefit of remarriage. Insofar as any ordinary contact with Mrs. Kaiser was concerned, it was unimportant to him whether they had remarried or merely continued living together. As an attorney requested to assist this client in a claim that he knew could be tenable only on the basis of a valid remarriage, he was morally and ethically required to ascertain her exact status before he could properly represent her in any matter dependent upon a legal marriage at the time of Kaiser's death. He elected to proceed without raising the question and in so doing was either indifferent to the consequences of his action or was actively participating in a fraud, possibly even the subornation of perjury. We find only that he was indifferent to an unconscionable degree in violation of his duty to his client and to the administrative agency before which the matter was pending.

We then conclude as a matter of law that the acceptance if not solicitation of Mrs. Cacciavillani as a private client did not represent ethical conduct under DR9–101(B);[25] his conduct in the justice of the peace court was not only demeaning to himself but to the court, and was in violation of DR7–106(C);[26] and his direct contact with per-

---

**25.** DR9–101(B): "A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee."

**26.** DR7–106(C): "In appearing in his professional capacity before a tribunal, a lawyer shall not: * * * (6) Engage in undignified or dis-

sons represented by their own attorneys was in violation of DR7–104(A)(1).[27] These acts constitute conduct unworthy of an attorney and his only explanation therefor seems to be that he did not know better. He had had the benefit of three years in the Law School of the University of Wyoming, a recognized and accredited institution. The records of his admission show that at that school he took a one credit-hour course in Professional Responsibility. Since the first organization of the bar, effective January, 1940, this court has recognized the applicability of the Canons of Professional Ethics of the A.B.A. Respondent· must therefore be considered to have had more than a passing acquaintance with what was considered ethical conduct. He had had the benefit of classroom instruction and contact with teachers who were experienced in the practice of law. He had worked with and against attorneys who had ethical standards. It is inconceivable that legal ethics was a field in which he had no knowledge at all and we cannot accept his counsel's attempt to excuse him on the basis that he was a single practitioner, not having the benefit of an older and wiser mentor to point out the niceties of professional conduct. As this court said in *State Board of Law Examiners of Wyoming v. Brown,* 53 Wyo. 42, 50, 77 P.2d 626, 629 (1938):

"All members of the legal profession know that when they are admitted to practice law they assume certain obligations and duties which properly met must conform to certain standards in honesty and fair dealing as concerns their clients, the courts, the profession, and the public at large. *State ex rel. Spillman v. Priest,* supra [123 Neb. 241, 242 N.W. 433]. It goes without saying that because of the very nature of a lawyer's work these standards should not be and are not low. In this state, before being admitted to practice, the applicant must take an oath that he will, among other things, 'faith-

fully and honestly' discharge the duties of an attorney and counselor at law. Sec. 9–113 W.R.S., 1931 [§ 33–50, W.S.1957]."

Before one takes such an oath he should have a clear concept of those duties and if he did not, then we must at this somewhat late date rectify the mistake that we made in first admitting him to practice.

We find the respondent's improper behavior as charged in Docket 5 clearly established and his excuse therefor lame and unacceptable. Even the newly admitted lawyer advising his first client on his first day in practice must know that perjury is one of the most reprehensible of legal crimes and that he who assists in the perpetration thereof is equally guilty with the one he assists. He must therefore not only scrupulously avoid participation of any kind in committing the fraudulent act, but must guard his uninformed client against conduct that could lead to criminal charges. If a client is to swear to an affidavit or testify under oath, the attorney's first obligation is to make sure that he does not through ignorance or misinterpretation give false testimony or even inadvertently misrepresent the facts. To that end the canons forbid the attorney to counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent. Respondent was present when Mrs. Kaiser testified, not that she and her husband had remarried, but that they never had been divorced. However mistaken Mrs. Kaiser might have been in this view, it was respondent's clear and unavoidable duty to set the record straight in this regard. If he had basis to believe that the parties had remarried prior to the death, he could properly present that basis for the claim, but he could under no circumstances properly sit back and let his client give a false interpretation of what had happened. It taxes credulity to ask this court to believe that had he carefully considered

---

courteous conduct which is degrading to a tribunal."

**27.** DR7–104(A)(1): "During the course of his representations of a client a lawyer shall not: (1) Communicate or cause another to commu-

nicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so."

the question and gone into the matter with Mrs. Kaiser he would not have remembered the conversation and what steps he took to assure himself that he was not putting his client into a false if not downright fraudulent position. His assumption of remarriage is then immaterial to the charge, and he has been guilty of failure to represent the best interests of a client in an honest and truthful way. This conduct is violative of DR7–102 [28] in several respects and even if it resulted from negligence rather than evil intent, is completely devoid of exoneration because it represents such a material failure to function as a counselor to his client. It makes us seriously question whether he possessed the necessary qualities to be admitted to the bar in the first place, and if the lack of such qualities has come to light after he had been admitted, there is no other course except to impose serious sanctions.

## DISPOSITION OF THE MATTER

The first group of charges are censurable and if they stood alone would justify serious disciplinary action. Coupled with the very serious offense of permitting a client to take a false position, they justify major sanctions. As we have said, the preparation of the affidavit for Mrs. Kaiser may or may not represent unethical conduct, depending upon the facts but, if so, would be an additional instance of respondent's failure properly to advise his client and avoid the possible perpetration of fraud. The important fact is his continuing and unjustified refusal or neglect to ask a few simple questions about his client's status. Giving respondent the benefit of every doubt, it appears that this court must take stringent measures. Were the record complete at this time we might well be disposed to conclude that respondent has demonstrated an unfitness to continue as a member of the bar of this state and that it would be in his interest as well as the state's to remove his name from the roll of attorneys authorized to practice herein. However, before either the final sanction of disbarment or suspension for some definite period is imposed, we think that there should be a proper development of all the facts concerning the survivorship affidavit and that the untried charges should either be investigated and tried or, if investigation discloses their lack of merit, dismissed.

We therefore order that the respondent be forthwith suspended from all activities as a member of the bar of this state for such period of time as is necessary to permit final recommendation of the committee on all other charges pending against respondent or of which the committee may be aware, specifically including any charge that might result from the preparation of the survivorship affidavit. The committee is to proceed with all dispatch to investigate, and if it finds the charges meritorious to file formal charges, should that action be required; hold such hearings as are necessary; and make recommendations to this court concerning the same, within a period of 90 days from the date of this opinion.

During the period of such suspension respondent shall have no participation whatsoever in the practice of law, either as a practicing attorney or as a paralegal or other assistant to any attorney. He is, however, permitted to make immediate arrangements during a period of not to exceed 30 days to turn back to the appropriate client any documents or files pertaining to that client's business, or to turn them over

**28.** "DR7–102. Representing a Client Within the Bounds of the Law. (A) In his representation of a client, a lawyer shall not: * * * (2) Knowingly advance a claim or defense that is unwarranted under existing law * * *. (3) Conceal or knowingly fail to disclose that which he is by law required to reveal. (4) Knowingly use perjured testimony or false evidence. * * * (6) Participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false. (7) Counsel or assist his client in conduct the lawyer knows to be illegal or fraudulent. * * *

"(B) A lawyer who receives information clearly establishing that: (1) His client has, in the course of the representation, perpetrated a fraud upon a person or tribunal shall promptly call upon his client to rectify the same, and if his client refuses or is unable to do so, he shall reveal the fraud to the affected person or tribunal, except when the information is protected as a privileged communication."

to such other attorney as the client shall suggest, and may, without charge to the client or compensation in any way from the attorney to whom such business is transferred, confer with such attorney from time to time as requested by such attorney, solely for the purpose of enlightening such attorney as to any theories of the case he has developed and any avenues of research he has pursued. He shall be entitled to charge any client a reasonable fee for such services as he has performed to the date of this order, provided only that as to any matter which is presently pending in his office upon a contingent fee basis he shall share no interest whatever in the fee that may ultimately result from its prosecution.

The court expresses its sincere thanks to the attorneys who have fairly and ably prosecuted and defended this proceeding, and particularly appreciation of the work of the committee and any members of the bar of this state who have assisted it in its investigations.

ROSE, Justice, specially concurring.

In concurring, I do not retreat from my position stated in *Board of Trustees, Laramie County School District No. 1 v. Spiegel,* Wyo., 549 P.2d 1161 (1976), where I expressed the opinion that the presence of a fair and impartial administrative board is a prerequisite to a fair hearing as guaranteed by the due process clauses of the Constitution of the United States and the Constitution of Wyoming.

I continue to believe that in those instances where the same board receives the charges, brings the complaint, conducts the hearing and utters the final administrative verdict—there is an inherent—almost inhuman—demand for fairness to which it may be beyond human nature to impartially respond. It might be that even angels could not comply with such demands.

While saying this—I have absolutely no doubt but that the Grievance Committee called upon to act here have acted as impartially and dispassionately as is possible for human beings to act and have done so out of their deep and abiding dedication to the welfare of not only the legal profession but the respondent as well.

I further, while wishing that the right to inquire of administrative board members through voir dire was a settled procedural protective device in the fair trial process, realize that at this point it is not and that the able analysis of the law on the point by my Brother McClintock represents its true state.