John F. ROONEY, as Attorney General
of the State of Wyoming,
Complainant,

v.

Linden E. WHITCHURCH, Respondent.

Nos. 2, 5 and 5A.

Supreme Court of Wyoming.

Nov. 3, 1978.

Gerald A. Stack, Deputy Atty. Gen., Cheyenne, for complainant.

No appearance by or in behalf of respondent.

Before GUTHRIE, C. J., McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

McCLINTOCK, Justice.

By order of this Court dated June 3, 1977, Linden E. Whitchurch, respondent, was suspended from the practice of law for an indefinite period, pending further investigation and report by the Grievance Committee of the Wyoming State Bar. The previous opinion of this Court, consistent with and setting forth at some length the facts and reasons for the order, is reported as *Mendicino v. Whitchurch*, Wyo., 565 P.2d 460 (1977) and we shall in this opinion refer to the facts only as it is necessary to give context to this opinion.

As disclosed in our opinion, respondent was found guilty of a number of infractions of the Wyoming Code of Professional Responsibility, the principal one being his representation of one Barbara Kaiser in worker's compensation proceedings wherein she presented her claim as the legal widow of Robert Kaiser. Respondent had shortly before that time acted as her attorney in divorce proceedings filed in Converse County. The hearing therein was held, divorce orally granted, and decree signed in Natrona County, whereupon respondent delivered the signed decree to the clerk of that county. Notwithstanding respondent's unwitting misfiling of the signed decree he shortly thereafter represented Mrs. Kaiser in proceedings to obtain death benefits under the Wyoming Worker's Compensation Act. Mrs. Kaiser testified under oath and in respondent's presence that she was the legal widow of the decedent, no divorce ever having been granted. No attempt to correct or clarify this testimony was made by respondent, and we have already held that his conduct was irresponsible and unethical.

However, in the course of taking evidence by the Committee concerning respondent's representation of Mrs. Kaiser after the mis-filing of the divorce decree, respondent's counsel had developed the fact that respondent had also prepared an affidavit of survivorship for Mrs. Kaiser's execution, relating to property which had been held by Mr. and Mrs. Kaiser in Casper, Wyoming, but which by the terms of the decree had been set over to the husband. There was a discrepancy in the description of the property as set forth in the decree and as set forth in the affidavit. Respondent also objected in this court that the Committee had improperly included this incident as a partial basis for its recommendation of disbarment, without formal charge or notice thereof. Out of an abundance of caution and because of the discrepancy in description we ordered the Committee to investigate, file formal charges, hold hearings, and make further recommendations concerning this matter. We also directed it to consider all other pending matters and make disposition or recommendations concerning them.

Findings and Order of the Committee, together with record of an additional hearing conducted by the Committee, have now been filed with us. This record shows that an additional charge of misconduct against respondent was formally filed, notice of hearing thereon given, and further hearing held, which respondent chose not to attend. The other pending charges have been investigated and either dismissed or private reprimand thereon issued. A stipulation between the deputy attorney general and the then acting attorney for respondent has also been filed, establishing that the property described in the signed but misfiled divorce decree is the same property as that described in the affidavit wherein Mrs. Kaiser claimed to be the surviving widow of the deceased Robert Kaiser. It appears that the matter is now in position for final disposition.

As shown in our first opinion, there was no question in our minds that respondent at all times proceeded on the basis that he had procured a valid and final divorce for Mrs. Kaiser. We found his explanation of his subsequent conduct to be without substance, and said, 565 P.2d at 477:

" * * * Respondent was present when Mrs. Kaiser testified, not that she and her husband had remarried, but that they had never been divorced. However mistaken Mrs. Kaiser might have been in this view, it was respondent's clear and unavoidable duty to set the record straight in this regard. If he had basis to believe that the parties had remarried prior to the death, he could properly present that basis for the claim, but he could under no circumstances properly sit back and let his client give a false interpretation of what had happened. * * * This conduct is violative of DR7–102 [footnote omitted] in several respects and even if it resulted from negligence rather than evil intent, is completely devoid of exoneration because it represents such a material failure to function as a counselor to his client. * * * "

Respondent's action with respect to the affidavit is merely an extension, but a very material one, of that same misconduct. In preparing this affidavit, without careful examination of his client as to remarriage (if he thought that was a possibility) he was aiding his client in the commission of perjury unless there had been a legal remarriage. If this be mere ineptness, it to us demonstrates such a total incompetency to engage in the practice of law that it would be a travesty to permit him any longer to hold himself out as a practitioner of law.

One additional matter must be disposed of. Notice of the new charge and hearing thereon was first directed to respondent at a Cheyenne address. This notice came back unclaimed. The Committee then undertook an extensive search to find respondent, and while the record is not entirely clear, he must have received notice of the charges and hearing since on May 20, 1978 the Committee received from respondent a document entitled "Answer" which referred to the notice, findings and proposed action, and requested a hearing. In addition to a vitriolic attack upon the members of the Committee, as well as the executive secretary thereof, respondent, without alleging any specifics, questioned the service and generally denied each and every allegation of the complaint. He also stated as follows:

"All of these pleadings are obviously prepared pro-se without counsel due to the fact that the respondent has previously been reduced to a state of poverty by the same bias and prejudiced state. The respondent is also now of a diminished mental state wherein he is unable to intelligently respond to the committee's complaint. The respondent requests that an able and capable counsel be appointed by the State of Wyoming and the committee to represent the respondent in any and all proceedings that they subsequently decide to bring forth."

The Committee did appoint Carl L. Lathrop, an able and respected member of the Wyoming Bar practicing in Cheyenne, to represent respondent. He made an intensive and continued attempt to get in touch with his client. The facts of those attempts are shown in an affidavit which Lathrop filed with the Committee. This demonstrates an attempt to cooperate with and investigate to the fullest extent any defenses the respondent might have, but likewise shows that even though Lathrop was able to contact respondent by telephone and went to California to contact respondent personally, the latter would make appointments and then not keep them. As the obvious result, his counsel had no assistance at all. Apparently, however, respondent did become aware that there was a hearing set for July 14, 1978, because he forwarded another letter to the Committee, dated July 11, 1978 (received July 17, 1978; the postmark date is not legible), in which letter he said nothing about his diminished mental state but objected to appointment of Lathrop as his counsel; he also objected to a hearing on July 14; indicated that he considered the whole thing a "railroad job," but made no observations concerning any defense that he might make.

Pursuant to Lathrop's motion filed prior to July 14, the meeting scheduled for that date was not heard, and the matter did not come on until August 18, 1978, the respondent being absent and not represented by

counsel although the Committee did have before it at that time a full and complete report by Lathrop of his attempts to contact respondent and his failure to establish any contact with him. Attached to this report is a letter dated July 25, 1978, recapitulating all of Lathrop's attempts to contact respondent and the latter's lack of cooperation, if not deception. Lathrop's letter advises of the rescheduling of the hearing, telling him of the probable procedure and possible sanctions. Copies of the letter were addressed to five different addresses that might result in delivery thereof to respondent, and it is obvious from his later letter to the Committee that he was aware thereof. Respondent was further advised that if respondent was unable to present a defense because of mental ill health, evidence could be presented along that line to invoke the provisions of Rule XI of the Disciplinary Code of the Wyoming State Bar.

Were there anything in the record that seriously indicated the diminished mental capacity of respondent, we would be reluctant to proceed with the disbarment proceedings although it is obvious that in such case we would have to continue his suspension for such period of time as he or someone representing him should make some showing in his behalf. We are not impressed with the statement in his first answer that he was of diminished mental capacity. Because of the gravity of the charges and the consequences thereof, the Committee, as has this Court, has given respondent every opportunity to present a meaningful defense to the charges. We think that he has sought only to play a game with the Court. Neither he nor his counsel filed any objection to the opinion previously entered by us, nor to the extensive findings of fact, conclusions of law and order we then entered.

On the basis of our independent examination of the whole record and the findings and recommendations of the Committee, we hold that the proceedings have been regularly conducted, that respondent be permanently disbarred from the practice of law, and that his name be removed from the list of attorneys licensed to practice in this state.